COMMONWEALTH vs. LOUIS J. CATANIA.

Essex. November 9, 1978. — January 29, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Forgery. False Pretenses. Practice, Criminal,* Directed verdict, Duplicitous punishment.

At the trial of complaints charging the defendant with uttering a forged instrument and larceny by false pretenses of over $100, there was sufficient evidence as to the existence of the essential elements of the crimes, including the defendant's knowledge, to warrant the denial of the defendant's motions for directed verdicts. [189]

Where there was evidence at the trial of a defendant charged with uttering a forged instrument and larceny by false pretenses of over $100, that three days after the defendant had negotiated the forged instrument at a bank and received a portion of the proceeds in the form of a cashier's check and after he had been notified that the original check was a forgery, he negotiated the cashier's check at another bank and retained the proceeds, the judge erred in failing to instruct the jury as to mens rea in language sufficiently precise to insure that the jury were aware that guilty knowledge of the defendant had to be shown as of the time he negotiated the forged instrument and not merely shown as to the time when he negotiated the cashier's check. [189-191]

Consecutive punishments could not properly be imposed on a defendant upon conviction on two complaints stemming from the same incident charging the defendant with uttering a forged instrument and larceny by false pretenses of over $100. [191]

COMPLAINTS received and sworn to in the District Court of Lawrence on September 25, 1975.

On appeal to the Superior Court, the cases were tried before *Johnson, J.,* a District Court judge sitting under statutory authority.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Harvey A. Silverglate* for the defendant.

*Philip D. Moran*, Special Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. This is an appeal pursuant to G. L. c. 278, §§ 33A-33G, from convictions after a trial by jury in the Superior Court on two complaints which charged the defendant with (1) uttering a forged instrument, in violation of G. L. c. 267, § 5, and (2) larceny by false pretenses of over $100 in violation of G. L. c. 266, § 30. The defendant was sentenced to one year in a house of correction on the uttering conviction and one year from and after completion of that sentence on the conviction of larceny by false pretenses. The defendant was remanded immediately to the house of correction to serve the sentences. Approximately three months later, a single justice of the Appeals Court granted the defendant's motion for stay of execution of sentence and release pending disposition of his appeal. The Appeals Court affirmed the judgments (*Commonwealth* v. *Catania*, 6 Mass. App. Ct. 830 [1978]), and we granted the defendant's application for further appellate review.

The defendant argues four assignments of error: (1) the failure of the trial judge to direct verdicts of not guilty, (2) certain errors in the judge's instructions to the jury, (3) in particular, the judge's failure to charge adequately on the issue of the defendant's guilty knowledge that the $9,000 check was forged, and (4) illegality of the sentences imposed on the defendant, including illegal double punishment in the successive sentences. We conclude that the instructions to the jury were inadequate on the subject of the defendant's knowledge that the check was forged, and that there must be a new trial.

The facts as shown by the Commonwealth's evidence were as follows. On July 30, 1974, the defendant negotiated a $9,000 check which purported to be a cashier's check issued by and drawn on the Broadway National Bank of Chelsea (Broadway), at the Bay State National Bank in Andover (Bay State). He attempted to take $9,000 in cash

but after discussion with an employee of the bank, he took $2,000 in cash, $5,000 in a cashier's check, and $2,-000 was deposited to a checking account he had with the bank.

On August 2, 1974, an employee of Bay State notified the defendant that the $9,000 check was a photo offset forgery and that he should return the $5,000 cashier's check issued to him three days earlier by Bay State and also the $2,000 he had taken in cash and the other $2,000 he had withdrawn from his checking account. The defendant was also informed that Bay State was placing a stop-payment on its own cashier's check. Catania informed the bank employee that he knew nothing about a forgery but would contact his lawyer and the person from whom he received the check and get back to him either the next morning or the following Monday.

On that same day, August 2, 1974, shortly after receiving notice of the forgery, Catania arrived at yet another bank with the $5,000 cashier's check from Bay State and opened an account in this bank, the Commercial Bank and Trust Company of North Reading (Commercial). He deposited $1,500 in the account and took a treasurer's check for $2,500 and $1,000 in travelers' checks. Despite attempts by personnel of both banks to have Catania return the money, he never did so, and after a period of approximately one year criminal complaints were issued.

In contrast to much of the foregoing evidence presented by the prosecution, the defendant testified that he had received the check as payment on a ninety-day option for some real estate from a "Mr. Munroe" four and one-half months prior to finally presenting it at Bay State, and, in fact, that Munroe had insisted that Catania give him $2,500 in return for the check, since Munroe had decided that he was willing to pay only $6,500 for the option. The defendant denied that he had had any idea that the check might be a forgery when he presented it at Bay State on July 30, that he had done business at Bay State for years and that he continued to do a substantial amount of busi-

ness there even after the Broadway check had been shown to be forged. He denied that he had been notified by Bay State on the afternoon of August 2 that there was any problem with the Broadway check before he negotiated the Bay State check at Commercial.

1. There was no error in the denial of the defendant's motions for directed verdicts of not guilty, filed both at the close of the Commonwealth's case and at the conclusion of all the evidence. The test of sufficiency is whether the evidence considered in the light most favorable to the Commonwealth is sufficient for the jury to infer the existence of the essential elements of the crime charged in that indictment. *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975). When knowledge is an essential element of an offense, it can be proved by circumstantial evidence. *Commonwealth* v. *Altenhaus*, 317 Mass. 270, 273 (1944). There was evidence that the defendant held the $9,000 check many weeks beyond the time he could have negotiated it, even if the jury believed his testimony about Munroe. He also wanted cash for $9,000 rather than depositing to his account, although he ultimately compromised his position. Also, there was evidence that within a few days of his negotiation of the $9,000 check, he withdrew the $2,000 he had deposited to his account. Further, there was his conduct after receiving notice, as the jury could find, on Friday, August 2, 1974, that the check was a forgery. The jury could conclude that his whole conduct was in callous disregard of the bank's rights, and designed to realize as much for himself as he could. Indeed, at that time he went to a bank in another town within approximately thirty to forty minutes and negotiated the cashier's check for $5,000. Finally, the circumstantial case was particularly strong if the uttering of the $9,000 check was left unexplained, which was the situation when the Commonwealth rested its case, and was also the situation at the close of all the evidence, if the jury chose to disbelieve the defendant's testimony as to Munroe.

2. We conclude that the defendant must have a new trial because the judge's instructions to the jury did not

adequately inform the jury on the issue of mens rea. It is true that the judge charged the jury specifically, in several forms of words, that to convict the defendant proof was required that the forged instrument was uttered with knowledge of its falsity and with intent to defraud. Nevertheless, we have read the instructions to the jury in particular light of the evidence that the defendant, after receiving notice that the $9,000 check was a forgery, negotiated the $5,000 cashier's check of Bay State and received the proceeds of the check through Commercial. The instructions of the judge, and his charge in its entirety, contained no language which was sufficiently precise to insure that the jury were aware that guilty knowledge of the defendant must be shown as of July 30, 1974, at the time that he negotiated the $9,000 check at Broadway, and not merely shown as of August 2, 1974, when he negotiated the $5,000 check.

As a result, the jurors might well have been confused on this issue. Certainly, if they accepted as true the evidence of the defendant's negotiations of the $5,000 check after he had been told to return it to the Bay State bank, they would probably regard such conduct as at least unwise and perhaps reprehensible. Defense counsel, at the conclusion of the judge's charge pointed up this danger of confusion when he asked the judge to charge that guilty knowledge must be shown with reference to the uttering of the $9,000 check, and that subsequent unjust enrichment of the defendant should not enter into the jury's deliberations. The defendant's objections and exceptions were recorded as to the judge's failure to so charge.

As we have stated, the defendant's conduct after July 30, 1974, particularly with reference to the $5,000 check, was admissible to show his state of mind at the time of the July 30, 1974, transaction. However, the admission of the evidence created a danger that the jury would find culpable "knowledge" of the defendant merely in his callous disregard for the rights of the banks after he was advised to return the $5,000 check. Similarly there was a danger that the jury could have decided that the defendant com-

mitted larceny when he negotiated the $5,000 check. This danger could easily have been avoided by a brief and precise additional instruction to the jury. Such an instruction was not given.

3. Because it is possible that the issue may again become relevant after a new trial of these complaints, we turn to the defendant's argument that the imposition of successive sentences here was an impermissible double punishment. We agree. It is true that both offenses arose out of a single transaction. That alone is not determinative, however, for a single act may be offensive against two statutes. "If each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt [a defendant] from prosecution and punishment under the other." *Salemme* v. *Commonwealth*, 370 Mass. 421, 423 (1976). Stated another way, if one offense charged is a lesser included offense within the other offense charged, multiple punishment is not permissible. Applying this reasoning, it is clear that consecutive punishments could not properly be imposed as to the two complaints in this case. Considering that both charges stem from the same incident, "uttering a forged instrument" is another way of describing the false pretense required for proof of the larceny complaint. Thus the uttering offense is included within the larceny offense. See generally *Commonwealth* v. *Cerveny*, 373 Mass. 345, 354-356 (1977); *Gallinaro* v. *Commonwealth*, 362 Mass. 728, 735 (1973); *Kuklis* v. *Commonwealth*, 361 Mass. 302, 306 (1972); *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871); *United States* v. *Wilson*, 420 U.S. 332, 344 (1975); *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969).

We do not suggest that the Commonwealth is precluded from going to trial on both complaints, or that it must elect between them for trial. Our comment concerns only the issue of double punishment.

4. Because other issues argued are not likely to recur at any new trial, we need not discuss them. The judg-

ments are reversed, the verdicts set aside, and the case is remanded to the Superior Court for a new trial.

*So ordered.*