COMMONWEALTH vs. ROBERT K. JONES.

Barnstable. September 11, 1980. — January 30, 1981.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Homicide. Motor Vehicle,* Homicide. *Practice, Criminal,* Duplicitous convictions. *Constitutional Law,* Double jeopardy.

General Laws c. 90, § 24G, which makes culpable homicide by motor vehicle, did not impliedly repeal the common law crime of involuntary manslaughter arising out of wanton or reckless operation of a motor vehicle. [389-392]

Although vehicular homicide, under G. L. c. 90, § 24G, is not a lesser-included offense of manslaughter, convictions of a defendant for involuntary manslaughter by reckless driving and homicide by negligently operating a motor vehicle to endanger were duplicitous, and a judgment of conviction only on the more serious offense should have been entered. [392-395]

Even though a judge had imposed concurrent, not consecutive, sentences on a defendant convicted on duplicitous charges, this court vacated the convictions and sentences on the less serious charges. [395-397]

INDICTMENTS found and returned in the Superior Court on March 21, 1978.

The cases were tried before *Beaudreau,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Edward F. Fitzgerald* for the defendant.

*Don L. Carpenter,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. This is an appeal from the defendant's convictions of manslaughter, homicide by motor vehicle, and operating to endanger. On July 16, 1977, at approximately 5:30 A.M., the defendant, Robert K. Jones, an off-duty Mansfield police officer, while driving his car on the mid-Cape highway in Barnstable, travelled in the wrong di-

rection in the eastbound lane and collided head-on with an approaching van. As a result of the collision, two people in the van were killed instantly, and a third died on July 31, 1977. Indictments were returned charging the defendant with three counts of manslaughter; three counts of vehicular homicide caused by the operation of a motor vehicle negligently so as to endanger public safety (G. L. c. 90, § 24G); and operating to endanger (G. L. c. 90, § 24 [2] [a]). Prior to trial the defendant filed several motions to dismiss the indictments on multiple grounds. All the motions were denied. At trial before a jury in the Superior Court, the Commonwealth contended that the defendant was acutely intoxicated at the time of the accident. The defendant presented evidence that he was not criminally responsible because he was suffering from stage four dyssomnia (sleepwalking) at the time of the accident. He was found guilty on all counts and sentenced to concurrent terms in a house of correction.[1]

On appeal to the Appeals Court, the defendant alleged eleven assignments of error concerning the denial of his motions to dismiss, procedures leading up to the indictments, and various events that occurred at trial. In a lengthy opinion, the Appeals Court affirmed the convictions. *Commonwealth* v. *Jones,* 9 Mass. App. Ct. 103 (1980). We granted further appellate review. For the reasons stated below, we affirm the convictions of manslaughter and vacate the convictions of homicide by motor vehicle and of negligently operating to endanger.

Of the eleven issues originally raised by the defendant, this opinion addresses in depth only those two issues concerning the relationship between the statutory crime of homicide by motor vehicle and the common law crime of involuntary manslaughter caused by the reckless operation of a motor vehicle.

---

[1] On the manslaughter and homicide by motor vehicle convictions, the defendant received two and one-half year terms. On the operating to endanger conviction, the defendant was sentenced to a two-year term. All three sentences are to be served concurrently.

1. *Implied Repeal.*

The defendant first contends that the Legislature's enactment of G. L. c. 90, § 24G, inserted by St. 1976, c. 227 (homicide by motor vehicle),[2] impliedly repealed the common law crime of involuntary manslaughter arising out of wanton or reckless operation of a motor vehicle. Under G. L. c. 90, § 24G, homicide by motor vehicle may be committed in any one of three ways. The defendant may cause a death by operating under the influence of intoxicating liquor; by operating negligently; or by operating recklessly. The three ways are stated disjunctively and create separate and independent grounds for prosecution. A finding of ordinary negligence suffices to establish a violation of the statute. *Fadden* v. *Commonwealth,* 376 Mass. 604, 609-610 (1978). *Commonwealth* v. *Burke,* 6 Mass. App. Ct. 697, 700-701 (1978).

The crime of manslaughter is not defined by statute in this Commonwealth. Two distinct forms of manslaughter have arisen as the product of common law development. Only one of these — involuntary manslaughter — is at issue in this case. Involuntary manslaughter is defined as an unlawful homicide unintentionally caused by an act that constitutes such a disregard of the probable harmful consequences to another as to amount to wanton or reckless con-

---

[2] The act, entitled "An Act imposing certain penalties for causing the death of persons as the result of certain improper operation of motor vehicles," provides, "Whoever, upon any way or in any place to which the public has a right of access, or upon any way or in any place to which members of the public have access as invitees or licensees, operates a motor vehicle in violation of paragraph (*a*) to subdivision (1) of section twenty-four of chapter ninety [operating under the influence], or so operates a motor vehicle recklessly or negligently so that the lives or safety of the public might be endangered, and by any such operation so described causes the death of another person shall be guilty of homicide by a motor vehicle and shall be punished by imprisonment in a jail or house of correction for not less than thirty days nor more than two and one-half years, or by a fine of not less than three hundred nor more than three thousand dollars, or both."

duct. *Commonwealth* v. *Campbell,* 352 Mass. 387, 397 (1967), and cases cited.[3]

Before the enactment of G. L. c. 90, § 24G, in 1976, a defendant who had killed another person unintentionally by reason of his improper operation of a motor vehicle might have been prosecuted for any of a variety of misdemeanor offenses, such as driving so as to endanger, c. 90, § 24 (2) (*a*),[4] or for involuntary manslaughter, which carries a maximum penalty of twenty years' imprisonment in State prison. G. L. c. 265, § 13.[5] The legislative history of § 24G indicates that prosecutors faced with this choice hesitated to proceed on a manslaughter theory, even when the facts so warranted, because of the reluctance of jurors to convict fellow drivers on such a serious charge. See memorandum from Mr. Endicott Peabody to the Judiciary Committee of the Massachusetts General Court, dated March 29, 1976, regarding 1976 Senate Doc. No. 703. On the other hand, the penalties established for the misdemeanor of driving to endanger did not seem commensurate with the crime of causing a death. *Id.* From this history, it seems clear that the purpose of c. 90, § 24G, was to provide a middle ground

---

[3] Voluntary manslaughter, on the other hand, is an unlawful homicide intentionally caused, but occurring as a result of "a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon a sudden combat." *Commonwealth* v. *Campbell,* 352 Mass. 387, 397 (1967), and cases cited.

[4] General Laws c. 90, § 24 (2) (*a*), as appearing in St. 1975, c. 156, § 1, reads in relevant part: "Whoever upon any [public] way . . . operates a motor vehicle recklessly, or operates such a vehicle negligently so that the lives or safety of the public might be endangered, . . . shall be punished by a fine of not less than twenty dollars nor more than two hundred dollars or by imprisonment for not less than two weeks nor more than two years, or both."

[5] General Laws c. 265, § 13, as appearing in St. 1971, c. 426, provides in part: "Whoever commits manslaughter shall, except as hereinafter provided, be punished by imprisonment in the state prison for not more than twenty years or by a fine of not more than one thousand dollars and imprisonment in jail or a house of correction for not more than two and one half years."

between the felony of manslaughter and the misdemeanor of driving so as to endanger.[6]

The c. 90, § 24G, indictment returned in this case was framed exclusively under that portion of the statute which makes *negligently* operating to endanger culpable, and the defendant was prosecuted only on that theory. The defendant's prosecution on the manslaughter indictment was predicated on his wanton or reckless operation of a motor vehicle. It is the manslaughter conviction that the defendant contends is invalid. He points out, correctly, that one of the c. 90, § 24G, standards (causing the death of a person by operating "recklessly") appears indistinguishable from the common law definitions of involuntary manslaughter based on reckless conduct. He argues from this that the Legislature intended the § 24G offense to be the sole offense applicable where death is caused by a defendant's conduct in recklessly operating a motor vehicle, precluding any further prosecutions for involuntary manslaughter based on such conduct. Although conceding that this asserted legislative intent was nowhere made express, the defendant contends that the portion of § 24G based on recklessness is so inconsistent with the gravamen of involuntary manslaughter by motor vehicle as to effectively repeal the latter in part.[7]

Bearing in mind the very strong presumption against implied repeal, see *Commonwealth* v. *Hayes*, 372 Mass. 505, 511-512 (1977), and cases cited, we do not think there is sufficiently clear indication that the Legislature intended to preclude further involuntary manslaughter prosecutions

---

[6] The maximum penalty for violations of c. 90, § 24G, is two and one-half years' imprisonment and a $3,000 fine; for manslaughter, twenty years' imprisonment, G. L. c. 265, § 13; and for driving so as to endanger, two years' imprisonment and a $200 fine, G. L. c. 90, § 24 (2) (*a*).

[7] It might be more accurate to say that the defendant claims that the new statute *superseded* the common law crime in part. We note, too, that any claim of supersession must be limited to cases in which death by motor vehicle occurred upon a public way or in a place to which the public had access. There is, of course, no such public place requirement for common law manslaughter.

based on reckless driving.[8] The "recklessly or negligently" language of G. L. c. 90, § 24G, appears to have been taken virtually verbatim from the driving so as to endanger statute, G. L. c. 90, § 24 (2) (a), with the added requirement that the defendant's conduct cause a death. We cannot accept the premise that the Legislature intended significant consequences to attach to its failure to delete one word ("recklessly") when it imported language from the operating to endanger statute into the vehicular homicide statute. In reaching this conclusion, we take notice that by custom and usage the element of "recklessness" has been of little or no significance in the application of the operating to endanger statute. Because a violation of § 24G may be established by proving that the defendant's negligent or intoxicated driving caused a death, the statutory word "recklessly" seems to be surplusage. We conclude that the Legislature, by its enactment of c. 90, § 24G, did not impliedly repeal the common law crime of involuntary manslaughter, and therefore the trial judge was correct in denying the defendant's motion to dismiss the manslaughter indictment. Indeed, we consider that it was the legislative intent to create an additional offense for cases similar to this one, and the judge implemented that intent by submitting to the jury two homicide offenses: manslaughter based on recklessness, and vehicular homicide based on negligence.

2. *Duplicitous Convictions and Double Jeopardy.*

A second pretrial motion brought by the defendant sought dismissal of the c. 90, § 24G, indictment on the ground that it was duplicitous of the manslaughter indictment. The judge, relying on our decision in *Commonwealth* v. *Maguire*, 313 Mass. 669, 671-673 (1943), ruled that the c. 90, § 24G, offense was not a lesser-included

---

[8] The defendant points to decisions in other jurisdictions finding such an implied repeal. E.g., *State* v. *London*, 156 Me. 123 (1960). Cf. *McCreary* v. *State*, 371 So. 2d 1024 (Fla. 1979), and *State* v. *Young*, 371 So. 2d 1029 (Fla. 1979) (no implied repeal). The decisions all turn on the particular wording of the vehicular homicide and manslaughter statutes involved, however, and are not very helpful to us here.

crime within the manslaughter charge and denied the motion. Although we agree that the G. L. c. 90, § 24G, offense is not a lesser-included offense of manslaughter, we are persuaded that, in the situation here, the Legislature did not intend to permit convictions for both offenses.

In determining whether, on the basis of a single act, a defendant may be prosecuted and punished for two statutory or common law crimes, the long-prevailing test in this Commonwealth is whether each crime requires proof of an additional fact that the other does not. *Morey* v. *Commonwealth,* 108 Mass. 433, 434 (1871). *Kuklis* v. *Commonwealth,* 361 Mass. 302, 306-307 (1972). See *Blockburger* v. *United States,* 284 U.S. 299, 304 (1932) (adopting this test for Federal offenses). If so, neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature and hence not duplicitous. See, e.g., *Salemme* v. *Commonwealth,* 370 Mass. 421, 423-424 (1976).

Applying the *Morey* test to the two homicide offenses of which the defendant was convicted, we conclude that each offense plainly requires proof of an additional fact that the other does not. A conviction of vehicular homicide under G. L. c. 90, § 24G, requires the operation of a motor vehicle upon a way or in a place to which members of the public have access; a conviction of manslaughter requires neither the use of a motor vehicle nor any element of public access. To convict of involuntary manslaughter, the Commonwealth must prove wanton or reckless conduct; to convict of vehicular homicide, no such proof is necessary. See *Commonwealth* v. *Maguire,* 313 Mass. 669, 671-672 (1943). The *Morey* standard thus is satisfied.

The defendant contends, nonetheless, that c. 90, § 24G, must be deemed a lesser-included offense of manslaughter under the reasoning of *Costarelli* v. *Commonwealth,* 374 Mass. 677, 683-684 (1978). In *Costarelli,* we held that larceny of a motor vehicle and unauthorized use of a motor vehicle constitute "the same offense within the meaning of the double jeopardy clause," even though the latter requires

proof of use on a public way, which is not necessary for lar-
ceny. We there stated our belief that "the characterization
of use without authority as a lesser included offense of lar-
ceny is in accord with the realities of the offenses and the cir-
cumstances within which they occur," *id.* at 684, noting that
a public way is usually involved in either situation. Both
statutory offenses at issue in *Costarelli,* however, involved
motor vehicles, thereby far more closely approximating the
"same offense" than do the two offenses concerned here.

Although we decline to hold that vehicular homicide is a
lesser-included crime of manslaughter, we nonetheless con-
clude that in the present situation, which in fact did involve
operation of a motor vehicle on a public way, the two of-
fenses are sufficiently closely related so as to preclude pun-
ishment on both. See *Commonwealth* v. *Cerveny,* 373
Mass. 345, 354-356 (1977). If involuntary manslaughter by
reckless driving in public is proved, homicide by negligently
operating to endanger is proved as well. The former is
merely an aggravated form of the latter. Similarly, al-
though the defendant has not argued the point, if involun-
tary manslaughter by reckless driving in public is proved,
the nonhomicide offense of negligently operating to endan-
ger is also proved. There is no indication that, by enacting
the vehicular homicide statute as a middle ground between
operating to endanger and manslaughter, the Legislature
intended to punish a defendant for the two less serious mo-
tor vehicle offenses if he is already being punished under the
most serious offense of manslaughter. We conclude, there-
fore, that multiple punishments should be disallowed. See
generally Westen & Drubel, Toward A General Theory of
Double Jeopardy, 1978 Sup. Ct. Rev. 81, 111-118.

The trial judge thus erred in entering judgments of con-
viction of all three crimes.[9] The proper approach would

---

[9] Although we say the judge "erred," we have in mind that he was con-
fronted with issues not yet reached by this court, and that in practical ef-
fect both the Commonwealth and the judge implemented to a great extent
the legislative intent by (1) the charging of negligence (not recklessness) in

have been to submit the three charges to the jury and, if guilty verdicts were returned on more than one, to dismiss the less serious charge or charges prior to entering a judgment of conviction and sentencing on the most serious crime.[10] As a result of the duplicitous convictions, only the conviction on the most serious crime of manslaughter is valid. See *Commonwealth* v. *Grasso*, 375 Mass. 738, 740 (1978); *Kuklis* v. *Commonwealth*, 361 Mass. 302, 306-309 (1972).

The sentences imposed by the trial judge were not consecutive, but concurrent. When consecutive sentences on duplicitous charges have been imposed, the remedy ordered by this court has been to vacate both the conviction and sentence on the lesser-included offense, and to affirm that on the more serious offense. See, e.g., *Commonwealth* v. *White (No. 2)*, 365 Mass. 307, 311 (1974), cert. denied, 419 U.S. 1111 (1975); *Kuklis* v. *Commonwealth, supra* at 309. In past cases we have refused to disturb duplicitous convictions when *concurrent* sentences were imposed. *Commonwealth* v. *Tabor*, 376 Mass. 811, 825 (1978). *Commonwealth* v. *Grasso*, 375 Mass. 138, 140 (1978). We now conclude, however, that the protection against multiple punishments embodied in the *Morey* test for duplicitous convictions extends as well to the imposition of concurrent sentences for what amounts to the same offense. See *United States* v. *Buckley*, 586 F.2d 498, 504-505 & n.3 (5th Cir. 1978), cert. denied, 440 U.S. 982 (1979); *O'Clair* v. *United States*, 470 F.2d 1199, 1203-1204 (1st Cir. 1972), cert. denied, 412 U.S. 921 (1973); *United States* v. *Spears*, 449 F.2d 946, 948-949 & n.9 (D.C. Cir. 1971); *People* v. *Jankowski*, 408 Mich. 79, 94-96 (1980) (all vacating, on principles of

the vehicular homicide indictment, and (2) the imposition of concurrent sentences upon the several convictions.

[10] The trial judge correctly refused to require the Commonwealth in advance of trial to choose on which charge it wished to proceed. The Commonwealth would not have been required to choose among the charges unless necessary to protect the substantial rights of the defendant. See *Fadden* v. *Commonwealth*, 376 Mass. 604, 610 (1978). Cf. *Commonwealth* v. *Catania*, 377 Mass. 186, 191 (1979).

double jeopardy, the convictions and sentences on lesser-included offenses even though the sentences were to run concurrently).[11]

To continue to distinguish between consecutive and concurrent sentences is to assume that only the fact of imprisonment, and not the fact of conviction, is the harm resulting from the erroneous allowance of duplicitous convictions. Yet, adverse collateral consequences of convictions do exist, even when only concurrent sentences are involved. Among the collateral consequences acknowledged by the Supreme Court and other courts in various double jeopardy contexts are the harsher treatment that may be accorded the defendant under the habitual offender statutes of some States; the possible impeachment by prior convictions, if the defendant ever becomes a witness in future cases; and, in some jurisdictions, less favorable parole opportunities. See *Benton* v. *Maryland*, 395 U.S. 784, 790-791 & n.5 (1969), and cases cited; *O'Clair* v. *United States*, *supra* at 1203; *People* v. *Jankowski*, *supra* at 95; Note, Twice in Jeopardy, 75 Yale L.J. 262, 299-300 n.161 (1965). See generally Note, Collateral Consequences of a Criminal Conviction, 23 Vand. L. Rev. 929 (1970). Moreover, as the Court of Appeals for the First Circuit recognized in *O'Clair* v. *United States*, *supra* at 1203, "even if no other disabilities were incurred, there is always the extra stigma imposed upon one's reputation" by the fact of an additional conviction. For these reasons we will follow the procedure approved in *Kuklis* v. *Commonwealth*, 361 Mass. 302, 305-309 (1972), and vacate the convictions and sentences on the less serious offenses of homicide

---

[11] The Supreme Court has described the guarantee against double jeopardy as consisting of three separate constitutional protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969) (footnote citations omitted). See Note, Twice in Jeopardy, 75 Yale L. J. 262, 265-267 (1965). The third pillar of this tripartite protection, the proscription against multiple punishments, is the one assertedly implicated here.

by motor vehicle, G. L. c. 90, § 24G, and negligently oper-
ating to endanger, G. L. c. 90, § 24 (2) (*a*).

3.  As for the remaining issues raised by the defendant on
appeal, we agree with the result reached by the Appeals
Court, and any differences we may have as to the reasoning
on particular issues are not significant enough to merit fur-
ther discussion.

4.  The case is remanded to the Superior Court.  The
judgments of conviction of the less serious offenses of homi-
cide by motor vehicle, G. L. c. 90, § 24G, and negligently
operating to endanger, G. L. c. 90, § 24 (2) (*a*), are to be
vacated, and those complaints are to be dismissed.  The
judgments of conviction of manslaughter are affirmed.

*So ordered.*