COMMONWEALTH *vs.* DAVID M. BOYD.

No. 06-P-1629.

Essex. December 10, 2007. - November 20, 2008.

Present: GELINAS, SMITH, & SIKORA, JJ.[1]

*Kidnapping. Assault and Battery. Practice, Criminal,* Duplicative convictions,
   Parole, Sentence, Grand jury proceedings. *Grand Jury. Evidence,* Prior
   conviction. *Parole. Constitutional Law,* Sentence.

At the trial of indictments charging kidnapping and assault and battery, the
   judge did not err in denying the defendant's motion for a required finding
   of not guilty on the kidnapping charges, where the evidence abundantly
   established sustained confinement against the victim's will by actual force
   and the display of additional potential force without lawful authority
   [193-194]; further, the conduct characterized as kidnapping did not occur
   as a mere incident of the assault and battery, and therefore did not merge
   with the assault and battery so as to render the separate convictions duplica-
   tive [194-196].
The evidence presented before a grand jury amounted to probable cause to is-
   sue an indictment on the charge of kidnapping. [196]
At a criminal trial, no substantial risk of a miscarriage of justice arose from
   the repeated references by the prosecutor and witnesses to the defendant's
   prior conviction, where none of the references alluded to the character or
   gravity of the conviction, and where the evidence of the prior conviction
   was relevant to the defendant's motive for attacking the victim. [196-197]
The imposition of lifetime community parole under G. L. c. 265, § 45, without
   explicit indictment of a criminal defendant as a repeat offender violated
   art. 12 of the Massachusetts Declaration of Rights. [197]

INDICTMENTS found and returned in the Superior Court Depart-
ment on December 4, 2002.

The cases were tried before *Richard E. Welch, III,* J.

*Kathleen M. O'Connell* for the defendant.

*Linda A. Wagner,* Assistant District Attorney, for the Com-
monwealth.

---

[1]Justice Gelinas participated in the deliberation on this case prior to his
retirement.

SIKORA, J. A jury of the Superior Court convicted the defendant of kidnapping, G. L. c. 265, § 26; assault by means of a dangerous weapon, G. L. c. 265, § 15B; assault and battery, G. L. c. 265, § 13A; and threats, G. L. c. 275, § 2. It acquitted him on the charges of rape and indecent assault and battery. The defendant alleges three errors on appeal: (1) the kidnapping charge lacked sufficient evidence to support the indictment and conviction, and merged with the assault-related charges; (2) repeated references at trial to a prior conviction unduly prejudiced the jury; and (3) the sentence of lifetime community parole under G. L. c. 265, § 45, was unlawful. Only the third contention has merit, and we vacate that element of the total sentence.

1. *Evidence at trial.* The evidence permitted the jury to find the following facts. The defendant and the victim started dating in the summer of 2001. As that relationship progressed, the bond between the victim and her family deteriorated. Her sixteen year old son quarreled with the defendant and moved out. Then her family members (parents, brothers, and former husband) learned of the defendant's prior conviction for indecent assault and battery upon a child.[2] Concerned about her two minor daughters (aged eleven and seven) who resided with her, they insisted that she end the relationship. When she resisted the suggestion, her former husband, the daughters' father, sought the intervention of the Department of Children and Families. She sold her condominium and jointly purchased a house with the defendant. The couple and the daughters moved into the house on July 26, 2002. The former husband filed an emergency care and protection petition pursuant to G. L. c. 119, § 51A, and on August 21, 2002, received custody of the daughters. In order to regain custody, the victim decided to sell the house and to end all "contact whatsoever . . . with [the defendant]." The defendant eventually assented. On October 9, 2002, she executed a brokerage agreement with a real estate agent to sell the house and signed his name with his permission.

On that day the defendant came home at about 10:30 P.M. For the next forty-five minutes he urged the victim to continue the relationship. In frustration he cursed her and went to an office

---

[2]The jury heard that the defendant had a conviction, but did not learn of its nature.

room upstairs. At about midnight the victim went to bed in the bedroom upstairs and fell asleep. She awoke to uninvited touching by the defendant; sexual intercourse followed.[3] She went to the office to sleep on the futon. She was crying and trembling. The defendant entered the office and said: "[Y]ou f'ing bitch, stop being such a drama queen and get back in that room now, now." He was "extremely upset." The victim was afraid and returned to the bedroom, where she lay on the edge of the bed in the "fetal position" and waited for the defendant to fall asleep. After about twenty minutes she went back to the office, but returned a short time later and told the defendant that she would not testify for him at an upcoming hearing regarding his job security clearance. She went to the office, again. The defendant was furious. He followed her to the office.

The victim testified that she said, "[J]ust let me leave, I just want to get out of here. And he wouldn't let me leave." The defendant "grabbed . . . and slammed [her] down on the floor." She got up, but he pushed her down again. After he had pushed her down the third time, he straddled her chest until she could not breathe. He tightened his hands around her throat and accused her of ruining his life. She "started to see stars." He got off her. "[S]omeone is going to die tonight," he said. He went to the kitchen and returned with a knife. He straddled the victim and held the knife near her eye. He said that she "was ruining his life," that one of them "had to die," and that he "was going to kill [her] family." To humor him, she replied, "[Y]ou're right, I'm sorry, it was all my fault." He got off her, but continued the tirade for the next forty minutes. She asked for permission to go to the kitchen for a drink of water. He told her to "make it fast." Once downstairs, the victim grabbed her cellular telephone and car keys. Hearing the commotion, the defendant yelled: "[W]hat the 'f' do you think you're doing, where do you think you're going." The victim ran outside. He chased her. She jumped into her car and locked the doors. The defendant pounded on the driver's side door and window. As she backed out of the driveway, the defendant blocked the way. He continued to pound the car. She managed to navigate out of the driveway, made a call to her

---

[3]The jury acquitted the defendant on the charges of rape and indecent assault and battery. We omit the allegations and evidence.

brother describing the attack, drove to a police station, and reported the incident.

2. *Discussion.* a. *Kidnapping.* i. *Sufficiency of evidence and merger.* In the circumstances of this case, the elements of the crime of kidnapping required the Commonwealth to prove beyond a reasonable doubt that the defendant, (1) without lawful authority, (2) forcibly confined the victim (3) against her will. G. L. c. 265, § 26.[4] See *Commonwealth* v. *Nickerson*, 5 Allen 518, 525-526 (1863); *Commonwealth* v. *Perry*, 432 Mass. 214, 231 (2000). Confinement is "broadly interpreted to mean any restraint of a person's movement." *Commonwealth* v. *Lent*, 46 Mass. App. Ct. 705, 710 (1999). Forcible conduct includes acts of actual physical force or the display of potential force. See *Commonwealth* v. *Caracciola*, 409 Mass. 648, 652 (1991); *Commonwealth* v. *Titus*, 32 Mass. App. Ct. 216, 221 (1992). The element of "against her will" means "without her consent." *Commonwealth* v. *Travis*, 408 Mass. 1, 8 (1990).

On review of a denial of a motion for a required finding of not guilty, the question is whether the evidence viewed in the light most favorable to the Commonwealth permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). The Commonwealth provided sufficient evidence of each element.

The first sexual encounter with the defendant in the bedroom left the victim shaken. To avoid further contact she retreated to the office. The defendant followed her there, cursed her, and ordered her back into the bedroom. She lay on the edge of the bed for twenty minutes until he seemed to be asleep, and then returned to the office. She made one more visit to the bedroom to say that she would not testify in his behalf and went back to the office for a third time. From that point he threw her to the floor, choked her, held a knife to her face, threatened her, and berated her for about forty minutes. She used the kitchen ruse in order to escape the house as he pursued her and attempted to prevent her car from leaving the driveway. The evidence abundantly

---

[4]Section 26 also defines and punishes alternate and more popularly understood acts of kidnapping involving both the confinement and asportation of the victim.

established sustained confinement against her will by actual force and the display of additional potential force without lawful authority.

The defendant contends that the conduct characterized as kidnapping occurred as a mere incident of the assault and battery, and that it merged indistinguishably with the assault and battery so as to render the separate convictions duplicative.

Two methods of analysis test the claim of merger. The first inquires whether "each crime requires proof of an element that the other does not." *Morey* v. *Commonwealth,* 108 Mass. 433, 434 (1871). See *Commonwealth* v. *Valliere,* 437 Mass. 366, 371 (2002), citing *Commonwealth* v. *Buckley,* 410 Mass. 209, 222 (1991). If each contains a different element, they do not merge. *Commonwealth* v. *Valliere, supra.* If each crime includes a distinctive element, neither can qualify as a duplicative "lesser-included offense of the other." *Commonwealth* v. *Jones,* 382 Mass. 387, 393 (1981). *Commonwealth* v. *Valliere, supra.* The alternative analysis inquires whether the actions of the defendant were "so closely related in fact as to constitute in substance but a single crime." *Commonwealth* v. *St. Pierre,* 377 Mass. 650, 662-663 (1979). In such instances the trial court should not sentence the defendant for both the more serious and the less serious offense. See *Commonwealth* v. *Jones, supra* at 394 (even though vehicular homicide was not a lesser included offense of manslaughter, the close relationship of the two invalidated punishment for both); *Commonwealth* v. *Thomas,* 401 Mass. 109, 119-121 (1987) (conviction of rape warranted dismissal of a charge of indecent assault and battery); *Commonwealth* v. *Santos,* 440 Mass. 281, 292-294 (2003) (conviction of assault by means of a dangerous weapon vacated as duplicative of an armed robbery charge).

Here the test of comparative elements shows the offenses of kidnapping and assault and battery to be distinct. While the former requires the unlawful and forcible confinement of the victim against her will, the latter consists either of the defendant's (1) intentional (2) touching of the victim (3) of a nature harmful or offensive, (4) without justification or excuse, see *Commonwealth* v. *McCan,* 277 Mass. 199, 203 (1931); or of the defendant's "wilful, wanton, and reckless act [resulting] in personal injury to another." *Commonwealth* v. *Welch,* 16 Mass.

App. Ct. 271, 274-276 (1983). See *Commonwealth* v. *Burno*, 18 Mass. App. Ct. 796, 798 (1984). Each offense includes elements absent from the other.

Under the functional test, Massachusetts decisions have rejected the merger of kidnapping with offenses committed upon the victim during and immediately after the confinement or restraint. See *Commonwealth* v. *Rivera*, 397 Mass. 244, 253-254 (1986) (confinement preceding and enabling rape and robbery does not merge); *Commonwealth* v. *Vasquez*, 11 Mass. App. Ct. 261, 267-268 (1981) (abduction to a room in an abandoned building for the commission of rape does not merge); *Commonwealth* v. *Sumner*, 18 Mass. App. Ct. 349, 352-353 (1984) (locking the victim in the perpetrator's apartment as a prelude to rape does not merge); *Commonwealth* v. *Robinson*, 48 Mass. App. Ct. 329, 334 (1999) (confinement at gunpoint before murder does not merge); *Commonwealth* v. *Brown*, 66 Mass. App. Ct. 237, 242-244 (2006) (confinement of the victim before the rape comprised kidnapping and furnished the element of aggravation for conviction of aggravated rape; no merger). The consistent rule of the decisions is that confinement, detention, or restraint exceeding the conduct necessary for commission of the other charged offenses constitutes independent, not incidental, conduct. In the generic scenario of these cases, the perpetrator has deceived or forced the victim into confinement enabling the accomplishment of a grievous crime against the person of the victim. In those circumstances, the confinement is facilitation, and not duplication, of the further offense.

The distinction is not a technicality. It embodies the reality of the separate and specific injury inflicted upon the trapped victim as a captive: the frustration and indignity of detention; the experience of vulnerability and helplessness; and the dread of an unknown ending. (In the pattern illustrated by the cases cited above, confinement foreshadowed the commission of robbery, rape, and murder.) These tribulations will lengthen with duration of the restraint. They will afflict the victim before the commission of the facilitated crimes and afterward if the perpetrator continues to detain the victim.

In sum, the evidence allowed the jury to find that, at least from the moment when the defendant ordered the victim from

the office back into the bedroom until the moment when she finally evaded him at the foot of the driveway (a span well over forty minutes), the defendant had forcibly confined the victim against her will.

ii. *Probable cause before the grand jury.* In all material respects the evidence before the grand jury was the same as the evidence at trial, and we do not restate it. It amounted to probable cause to issue the indictment on the charge of kidnapping. See *Commonwealth* v. *Manning,* 44 Mass. App. Ct. 695, 702 (1998), citing *Commonwealth* v. *Lent,* 420 Mass. 764, 765 n.2 (1995).

b. *Prior conviction.* The defendant claims that the references by the prosecutor and witnesses to his prior conviction unduly prejudiced him. The Commonwealth points out that not one reference in question alluded to the character or gravity of the conviction. Instead, throughout the trial, the references were to "conviction of a crime in the past," "past criminal history," "criminal record," and simply the "past."

While "the prosecution may not introduce evidence of a defendant's prior or subsequent bad acts for the purpose of demonstrating bad character or propensity to commit the crime[s] charged," a defendant's motive for attacking the victim is relevant. *Commonwealth* v. *Butler,* 445 Mass. 568, 573-576 & n.6 (2005), quoting from *Commonwealth* v. *Barrett,* 418 Mass. 788, 793 (1994) (protective orders, disorderly conduct, and the girl friend's "black eye" admissible to show a continuous hostile relationship). "As a general rule, the Commonwealth is entitled to introduce all relevant evidence of motive." *Commonwealth* v. *Weichell,* 390 Mass. 62, 73 (1983), cert. denied, 465 U.S. 1032 (1984). Here the evidence at issue was admissible because it tended to explain the victim's loss of custody of her daughters, the resulting tension in her relationship with the defendant, and the attack. "The prosecution was entitled to present as full a picture as possible of the events surrounding the incident itself." *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 269-270 (1982).

Even when a defendant's prior bad acts are admissible, upon a timely objection the judge must exercise sound discretion and exclude them if their prejudicial effect substantially outweighs their probative value. *Commonwealth* v. *Bonds,* 445 Mass. 821, 831 (2006), citing *Commonwealth* v. *Valentin,* 420 Mass. 263,

270 (1995). Cutting against the defendant's allegation of prejudice is his failure to make a timely objection at trial. That omission restricts our review to inspection for "a substantial risk of a miscarriage of justice." *Commonwealth* v. *Azar*, 435 Mass. 675, 685-686 (2002). The judge gave a comprehensive limiting instruction, to which the defendant again did not object. We find no substantial risk that the findings of guilt rested not upon the fair consideration of the evidence, but upon the references to the defendant's prior conviction.

c. *Lifetime community parole.* Without "explicit indictment of (or complaint against) a defendant as a repeat offender," the imposition of lifetime community parole under G. L. c. 265, § 45, violates the requirement of art. 12 of the Declaration of Rights of the Massachusetts Constitution that "[n]o subject shall be held to answer for any crimes or offence" not "fully and plainly, substantially and formally, described to him . . . ." *Commonwealth* v. *Pagan*, 445 Mass. 161, 170 (2005). Here the Commonwealth has not charged the defendant as a repeat offender. We must vacate that sentence.

The transcript shows that the judge added the parole sentence after he had imposed sentences for the other offenses and directed the clerk to read them into the record.[5] The judge did not explicitly connect the element of life parole to the other terms of the sentencing. However, from the record we cannot be certain whether the elimination of that element would alter his determination of the remaining sentences. In an abundance of caution, we remand that question for his judgment. See *Commonwealth* v. *Renderos*, 440 Mass. 422, 435 (2003) (same); *Commonwealth* v. *Talbot*, 444 Mass. 586, 597-598 (2005) (case remanded for resentencing "[b]ecause lifetime community parole may have played a part in the judge's over-all concept in sentencing the defendant").

3. *Conclusion.* We affirm the defendant's convictions. We

---

[5]The judge commented, "I'm mandated under section 45 of chapter 265 to have lifetime community parole supervision." He was accepting the prosecutor's argument that the statute required that additional sanction by reason of the defendant's prior conviction of indecent assault and battery and current conviction of kidnapping. The prosecutor appeared unaware of the requirement of the additional indictment. On appeal the Commonwealth concedes the error.

vacate the sentences and remand the case to the Superior Court for resentencing consistent with this opinion.

*So ordered.*