COMMONWEALTH *vs.* JOSEPH H. BUCKLEY.

No. 08-P-1507.

Plymouth. November 17, 2009. - January 15, 2010.

Present: BERRY, GRAHAM, & MEADE, JJ.

*Practice, Criminal,* Lesser included offense, Duplicative convictions, Plea, Dismissal, Bill of particulars. *Evidence,* Guilty plea.

A Superior Court judge properly denied a criminal defendant's motion to vacate and dismiss his convictions of motor vehicle homicide and operating to endanger, on grounds that they were duplicative of his conviction of manslaughter, where motor vehicle homicide is not a lesser included offense of manslaughter, and where the defendant admitted to facts during his guilty plea that included different acts to support his convictions of operating to endanger and manslaughter [125-128]; further, the defendant, by pleading guilty to three indictments with facial allegations of distinct offenses, conceded that he committed three separate crimes and failed to raise his challenge by a pretrial motion to dismiss [128-129].

A Superior Court judge properly denied a criminal defendant's motion to vacate and dismiss his conviction of operating a motor vehicle after suspension or revocation of a license for operating under the influence in violation of G. L. c. 90, § 23, on grounds that the indictment failed to allege a crime, and to vacate and dismiss his conviction of operating a motor vehicle after suspension or revocation of a license (subsequent offense) in violation of G. L. c. 90, § 23, on grounds that the indictment was ambiguous, where the defendant neither moved to dismiss the indictments pursuant to Mass. R. Crim. P. 13(c) and G. L. c. 277, § 47A, nor sought a bill of particulars pursuant to Mass. R. Crim. P. 13(b), but rather pleaded guilty to both indictments, and thus waived all nonjurisdictional defects. [129-130]

INDICTMENTS found and returned in the Superior Court Department on March 8, 2002.

Following pleas of guilty, a motion to vacate and dismiss convictions, filed on May 15, 2008, was heard by *Carol S. Ball,* J.

*Michael J. Hickson* for the defendant.

*Carolyn A. Burbine,* Assistant District Attorney, for the Commonwealth.

MEADE, J. On December 11, 2002, the defendant pleaded guilty to eight indictments charging him with manslaughter in violation of G. L. c. 265, § 13 (indictment no. 001); motor vehicle homicide by reckless or negligent operation in violation of G. L. c. 90, § 24G(*b*) (no. 002); leaving the scene of a property damage accident in violation of G. L. c. 90, § 24 (no. 003); operating a motor vehicle so as to endanger in violation of G. L. c. 90, § 24(2)(*a*) (no. 004); failure to stop for a police officer in violation of G. L. c. 90, § 25 (no. 005); operating a motor vehicle after suspension or revocation of a license for operating under the influence in violation of G. L. c. 90, § 23 (no. 006); operating a motor vehicle after suspension or revocation of a license in violation of G. L. c. 90, § 23 (no. 007); and operating a motor vehicle after suspension or revocation of a license, subsequent offense, in violation of G. L. c. 90, § 23 (no. 008). Six years after pleading guilty, the defendant moved pursuant to Mass.R.Crim.P. 30(a), as appearing in 435 Mass. 1501 (2001), to vacate and dismiss his convictions on indictments no. 002 and no. 004, because they were duplicative of indictment no. 001; to vacate his conviction on indictment no. 006 because it did not state a crime; and to vacate his conviction on indictment no. 008 because it was ambiguous.[1] The judge who accepted the defendant's guilty pleas denied the motion, and the defendant now appeals. We affirm.

1. *Background.* The facts admitted to by the defendant at his plea hearing are as follows. In January, 2002, the defendant was stopped by Officer Jason Able of the Marshfield police department because one of the tail lights on his red Chevrolet Caprice automobile was out. When Able approached the car, he noticed that the defendant was arguing with his passenger, Lorna Hanley. Before Able reached the driver's side window, the defendant rapidly accelerated, turned onto Route 139, and cut off traffic in the process.

As the defendant drove westbound, he swerved into oncom-

---

[1]Indictments no. 002, 005, 007, and 008 were placed on file with the defendant's consent. "Ordinarily, we do not consider appeals from indictments placed on file, . . . but in the interest of efficiency and in a suitable case we may choose to do so." *Commonwealth* v. *Chappee*, 397 Mass. 508, 523 (1988). This is such a case.

ing traffic in an effort to pass other westbound drivers. During one such maneuver, the defendant struck an oncoming vehicle and damaged it. With Officer Able in pursuit, the defendant entered Route 3 and traveled in the breakdown lane at speeds between ninety and one hundred miles per hour.

When the defendant attempted to turn off Route 3 onto Route 228, he lost control of his car. The car became airborne, hit a tree, and burst into flames. The car came to rest in a ravine, and the defendant either was able to get out of the car or he had been ejected. The defendant's passenger, Lorna Hanley, died in the crash. After the fire was extinguished, she was found in the front passenger seat with her seatbelt still fastened. She was twenty-three years old.

At the time of the accident, the defendant's license had been suspended based on a prior conviction of operating under the influence, and his license had been suspended in the past due to his other "numerous" convictions. The evidence would have also shown that the defendant knew he was being pursued by the police and that he failed to stop.

2. *Discussion.* a. *Elements vs. conduct.* The defendant claims that the judge erred in refusing to dismiss his motor vehicle homicide and his operating to endanger convictions because they are duplicative of his manslaughter conviction. We disagree. In support of his claim, the defendant relies on *Commonwealth v. Jones*, 382 Mass. 387, 394 (1981), where the Supreme Judicial Court held that although the defendant's conviction of motor vehicle homicide was not a lesser included offense of his manslaughter conviction, i.e., each offense contained an element that the other did not, the court nonetheless determined that these offenses were "sufficiently closely related so as to preclude punishment on both."

The origin of this conduct-based approach can be traced to dictum in *Commonwealth v. St. Pierre*, 377 Mass. 650, 662-663 (1979), where the court remarked that "there may be an element of harassment in the use of multiple charges in the same prosecution when they open up a prospect of 'double' punishment for crimes not duplicative in the technical sense, but so closely related in fact as to constitute in substance but a single crime." *Jones* and *St. Pierre* represented departures from the

traditional elements-based test of *Morey* v. *Commonwealth*, 108 Mass. 433 (1871). "The traditional rule in Massachusetts, as embodied in *Morey*, [*supra*], and its progeny, is that a defendant may properly be punished for two crimes arising out of the same course of conduct provided that each crime requires proof of an element that the other does not." *Commonwealth* v. *Valliere*, 437 Mass. 366, 371 (2002).

The initial problem with the defendant's claim is that the siren song of the conduct-based approach has been silenced. In *Commonwealth* v. *Crocker*, 384 Mass. 353, 360 (1981), decided eight months after *Jones*, the court held that "the prohibition against duplic[ative] convictions at a single criminal proceeding is properly limited to ensuring that the court does not exceed its legislative authorization by imposing multiple punishments for a single legislatively defined offense . . . . In order to determine whether the Legislature in a given situation has authorized conviction and sentence under two statutory offenses, the *Morey* test provides a fitting rule of interpretation." In addition, the court in *Crocker* held that the conduct-based approach, to the extent that it has been incorporated into Massachusetts common-law rule, applies only to instances of successive prosecution, not multiple charges tried in a single proceeding. *Id.* at 359 n.7. Although *Crocker* did not expressly overrule *Jones* or *St. Pierre*, we have said that those cases have implicitly been repudiated. *Commonwealth* v. *Arriaga*, 44 Mass. App. Ct. 382, 388 (1998). See *Commonwealth* v. *Niels N.*, 73 Mass. App. Ct. 689, 704-713 (2009) (Cypher, J., dissenting in part). See also *Commonwealth* v. *Jones*, 441 Mass. 73, 76 (2004) (the actual criminal conduct alleged is wholly irrelevant to the application of the *Morey* rule; rather, the elements of the crimes charged are considered objectively, without regard to the facts); *Commonwealth* v. *Gallant*, 65 Mass. App. Ct. 409, 414-415 (2006) ("[I]t is difficult to see how such a conduct-based test could ever possibly mesh with the *Morey* standard, [because] the *Morey* rule *only* applies to situations in which two or more convictions arise out of precisely the same act, let alone acts 'closely related in fact' ").

To the extent there remained any uncertainty about the continuing vitality of the conduct-based approach in a single proceeding, the Supreme Judicial Court recently put it to rest. In *Com-*

monwealth v. *Vick,* 454 Mass. 418, 431 (2009), the court held that the traditional, element-based *Morey* rule "remains the standard for determining whether multiple convictions stemming from one criminal transaction are duplicative." The "elements-based approach recognizes 'the role of the Legislature as the primary body that creates, and defines, crimes, and the fact that, in punishing related offenses, the Legislature usually intends to further distinct policies.' " *Id.* at 431-432, quoting from *Commonwealth v. Jones,* 441 Mass. at 75. While the court acknowledged that several of its cases left the appearance of a jurisprudential shift away from a pure analysis of the elements to permit a conduct-based analysis of the facts of a particular case to assess whether closely related acts constituted but a single offense,[2] it made clear that it was not the court's intention to do so. *Commonwealth v. Vick, supra* at 433-434. Rather, it continued to adhere to the view it had expressed in *Crocker,* where it held that "a departure from the elements-based *Morey* test, in favor of a judicial assessment of the evidence introduced in a single criminal trial of multiple offenses, 'runs the risk of unnecessary intrusion into the legislative prerogative to define crimes and fix punishments.' " *Id.* at 434, quoting from *Commonwealth v. Crocker,* 384 Mass. at 359.

Specifically addressing the conduct-based seed planted in *St. Pierre,* the court clarified that nowhere in that case did the court "suggest that the traditional elements-based approach enunciated in *Morey* should be supplemented with or replaced by a conduct-based approach for analyzing purported duplicative offenses." *Commonwealth v. Vick, supra.* In fact, the only time "[t]he question whether two offenses are 'so closely related in fact as to constitute in substance but a single crime,' *Commonwealth v. St. Pierre, supra* [at 662-663], becomes pertinent in a single criminal proceeding [is when] one crime is a lesser

---

[2]See *Commonwealth v. St. Pierre,* 377 Mass. at 662-663; *Commonwealth v. Wolinski,* 431 Mass. 228, 238-239 (2000); *Commonwealth v. Jones,* 441 Mass. at 76; *Commonwealth v. Keohane,* 444 Mass. 563, 574-575 (2005); *Commonwealth v. Cabrera,* 449 Mass. 825, 827-828 (2007). This court has, in the past, left the same misimpression. See *Commonwealth v. Morin,* 52 Mass. App. Ct. 780, 787-788 (2001); *Commonwealth v. Pileeki,* 62 Mass. App. Ct. 505, 513-514 (2004); *Commonwealth v. Kegler,* 65 Mass. App. Ct. 907, 909 (2006); *Commonwealth v. Boyd,* 73 Mass. App. Ct. 190, 194-195 (2008); *Commonwealth v. Niels N.,* 73 Mass. App. Ct. at 697-699.

128        76 Mass. App. Ct. 123 (2010)

Commonwealth *v.* Buckley.

included offense of the other, or where there are multiple counts of the same offense." *Commonwealth* v. *Vick, supra* at 435. See *Commonwealth* v. *Kulesa,* 455 Mass. 447, 45-451 (2009); *Commonwealth* v. *Putnam,* 75 Mass. App. Ct. 472, 480-481 (2009). See also *United States* v. *Dixon,* 509 U.S. 688, 704-711 (1993) (overruling the unprincipled, confusing, and unstable conduct-based test for double jeopardy violations announced in *Grady* v. *Corbin,* 495 U.S. 508 [1990], in favor of the time-tested elements-based approach derived from *Morey*). Where motor vehicle homicide is not a lesser included offense of manslaughter,[3] multiple punishments are permitted even when the offenses arise from the very same criminal event. See *Commonwealth* v. *Vick,* 454 Mass. at 436; *Commonwealth* v. *Pileeki,* 62 Mass. App. Ct. 505, 518 (2004) (Brown, J., concurring in the result).

b. *Pleading guilty.* An additional circumstance that sets this case apart from *Commonwealth* v. *Jones,* 382 Mass. at 394, and also disposes of the defendant's remaining claims, is that Jones was convicted after trial, and here the defendant pleaded guilty. "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States* v. *Broce,* 488 U.S. 563, 569 (1989). *Commonwealth* v. *Mazzantini,* 74 Mass. App. Ct. 915, 915 (2009). Because the defendant pleaded guilty to three indictments "with facial allegations of distinct offenses," he conceded that he committed three separate crimes. *United States* v. *Broce, supra* at 570. To the extent the defendant believed the Legislature did not intend that he be punished for motor vehicle homicide, negligent operation as

---

[3]The defendant's claim that his operating to endanger conviction is duplicative of his conviction of motor vehicle homicide by reckless or negligent operation stands on a different footing because the former is a lesser-included offense of the latter. See *Commonwealth* v. *Constantino,* 443 Mass. 521, 526 (2005); *Commonwealth* v. *Williams,* 73 Mass. App. Ct. 833, 838 (2009). However, the defendant's convictions of two cognate offenses may be sustained here because the facts to which he admitted during his guilty plea included different acts to support each conviction, and he does not claim otherwise. See *Commonwealth* v. *Berrios,* 71 Mass. App. Ct. 750, 753 (2008). Specifically, when first approached by Officer Able, the defendant's act of rapidly accelerating and cutting off traffic on Route 139 is separate from his reckless act of attempting to leave Route 3 at a high rate of speed, which caused his car to become airborne and resulted in Hanley's death.

well as manslaughter, he had the opportunity, instead of pleading guilty, to make that challenge in a pretrial motion to dismiss. *Id.* at 571. See *Commonwealth* v. *Mazzantini, supra* at 915-916 (by pleading guilty, the defendant conceded that he was guilty of possession of heroin and to being present where the same heroin was kept). He chose not to, and hence relinquished that entitlement. *United States* v. *Broce, supra* at 571. The defendant does not claim that his guilty plea was not voluntary and intelligent, see *Commonwealth* v. *Hunt*, 73 Mass. App. Ct. 616, 619 (2009), and therefore, the motion to vacate his sentences and dismiss his convictions on the indictments charging motor vehicle homicide (no. 002) and operating to endanger (no. 004) was properly denied. See *United States* v. *Broce, supra* at 574; *Commonwealth* v. *Mazzantini, supra* at 916.

The defendant's remaining claims are similarly afflicted. The first of these is the defendant's claim that indictment no. 006, which charged him with operating a motor vehicle after suspension or revocation of a license for operating under the influence in violation of G. L. c. 90, § 23, does not allege a crime. The defendant's last claim is that indictment no. 008, which charged the defendant with operating a motor vehicle after his license had been suspended or revoked, is "inherently ambiguous and prejudicial" for listing four predicate offenses in the alternative. We disagree with both claims.

"An indictment shall not be dismissed or be considered defective or insufficient if it is sufficient to enable the defendant to understand the charge and to prepare his defense; nor shall it be considered defective or insufficient for lack of any description or information which might be obtained by requiring a bill of particulars." *Commonwealth* v. *Gonzalez*, 22 Mass. App. Ct. 274, 284 (1986), quoting from G. L. c. 277, § 34. See *Commonwealth* v. *Hrycenko*, 417 Mass. 309, 313 n.5 (1994). To the extent the defendant believed that indictment no. 006 did not allege a crime, or that indictment no. 008 was fatally ambiguous, he could have moved to dismiss them pursuant to Mass.R.Crim.P. 13(c), as appearing in 442 Mass. 1516 (2004), and G. L. c. 277, § 47A. Also, to the extent he failed to comprehend the nature of the charges to properly prepare his defense to either indictment, he could have sought a bill of particulars pursuant to Mass.R.Crim.P. 13(b), as appearing in 442 Mass. 1516 (2004).

See *Commonwealth* v. *Senior*, 454 Mass. 12, 15-16 (2009). The defendant did neither. Instead, he pleaded guilty to both indictments. "A guilty plea, once accepted, leads to a final judgment of conviction; like a verdict of guilty, it is conclusive." *Commonwealth* v. *Cabrera*, 449 Mass. 825, 830 (2007). By its terms, a guilty plea "waives all nonjurisdictional defects." *Ibid.* If there were any nonjurisdictional defects such as the ambiguities alleged here, they were rendered irrelevant by his guilty pleas. *Commonwealth* v. *Zion*, 359 Mass. 559, 563 (1971).[4] By pleading guilty, the defendant foreclosed his right to request a decision by this court on legal questions which he raised or could have raised prior to entering the guilty pleas. See *ibid.* "He may not waive or terminate a trial by pleading guilty, sample the penalty and then elect to litigate preexisting nonjurisdictional legal questions." *Ibid.* See *Garvin* v. *Commonwealth*, 351 Mass. 661, 663-664, cert. denied, 389 U.S. 13 (1967) (an illegally obtained confession cannot be the basis for collateral attack on a conviction based on a voluntary and intelligent guilty plea).[5]

*Order denying motion for post-*
*conviction relief affirmed.*

[4]To the extent the defendant's claim can be construed as jurisdictional, and thus not waived by his guilty plea, see *Commonwealth* v. *Palladino*, 358 Mass. 28, 31 (1970); *Commonwealth* v. *Wilson*, 72 Mass. App. Ct. 416, 417-418 (2008), we note that indictment no. 006 properly alleged a crime. Contrary to the defendant's claim, the indictment properly alleged operation on a public way, and there was no requirement that it specify what substance the defendant was operating under the influence of when his license was suspended or revoked. A complaint or indictment is not subject to dismissal "if the offense is charged with sufficient clarity to show a violation of law and to permit the defendant to know the nature of the accusation against him." *Commonwealth* v. *Fernandes*, 430 Mass. 517, 520 (1999), cert. denied sub nom. *Martinez* v. *Massachusetts*, 530 U.S. 1281 (2000), quoting from *Commonwealth* v. *Green*, 399 Mass. 565, 566 (1987). "It is not necessary for the Commonwealth to set forth in the complaint or indictment every element of the crime to withstand a motion to dismiss." *Ibid.* In addition, the indictment's caption put him on sufficient notice that he was being charged with a violation of G. L. c. 90, § 23, see *Commonwealth* v. *Fernandes, supra* at 519, and there was no need to cite G. L. c. 90, § 24, in order to allege a crime.

[5]Finally, we note, on an alternative basis, that the defendant's challenge to indictment no. 008 also lacks merit. An indictment, such as this, may properly set forth four alternative bases supporting the charge. The use of the disjunctive in this manner was proper. See *Commonwealth* v. *Murphy*, 415 Mass. 161, 164 (1993).