DEPARTMENT OF YOUTH SERVICES vs. A JUVENILE.

Worcester. October 8, 1981. — December 22, 1981.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Moot Question. Practice, Civil,* Moot case, Trial by jury, Proceeding to
    extend commitment of juvenile.

An appeal from a judgment confirming an order of the Department of
    Youth Services, extending the commitment of a juvenile beyond his
    eighteenth birthday, did not become moot when the person subject to
    the order was released from custody. [785-788]
Under G. L. c. 120, § 20, a person subject to a Department of Youth
    Services extended commitment order was entitled to appeal a District
    Court confirmation of that order for trial before a jury-of-six.
    [788-791]
To justify extended commitment after a juvenile defendant's eighteenth
    birthday, the State must prove beyond a reasonable doubt that the de-
    fendant's release would create a public danger due to his mental or
    physical disorder. [791]

CIVIL ACTION commenced in the Second Southern
Worcester Division of the District Court Department on
September 7, 1979.

After appeal to the Central Worcester Division, the case
was transferred to the Worcester Division of the Juvenile
Court Department and was heard by *Gelinas, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Margaret H. Van Deusen* for the defendant.

*Lynn Morrill Turcotte,* Assistant District Attorney, for
Department of Youth Services.

HENNESSEY, C.J.  This appeal concerns the statutory
process by which a juvenile under the control of the Depart-
ment of Youth Services (department) may obtain review of
an order extending the period of his commitment beyond his

eighteenth birthday. The questions raised call for a construction of G. L. c. 120, § 20, which grants a right of appeal from a judgment confirming a Department of Youth Services extended commitment order. We hold that, by the terms of the statute, a juvenile is entitled on appeal to a new trial before a jury-of-six, and to a standard of proof beyond a reasonable doubt that his release would endanger the public.

In 1978, at the age of sixteen, the defendant was adjudicated a delinquent child pursuant to G. L. c. 119, § 58.[1] The District Court committed the defendant to the custody of the department, which placed him in the juvenile unit of a State hospital. In 1979, just before the defendant's eighteenth birthday, the department issued an order extending his commitment. As required by G. L. c. 120, § 17, the department applied for review by the original committing court, which confirmed the department's order.

The defendant, pursuant to G. L. c. 120, § 20, appealed the confirmation judgment to the District Court jury session, and filed a demand for a jury trial. A judge sitting in jury session denied the defendant's demand and heard the case without a jury. Evidence at the hearing consisted of a psychological evaluation of the defendant, and testimony by a psychiatrist, members of the juvenile center staff, and the defendant. The judge found that the defendant had committed a number of assaults and batteries during the last six months of his detention. He concluded that the defendant's release would be "physically dangerous to the public because of his mental deficiency," and affirmed the judgment confirming the department's extended commitment order. The defendant filed notice of appeal in the Appeals Court, and we transferred the case sua sponte.

1. *Mootness.* The Commonwealth argues that we should dismiss this case as moot, because the defendant has already

---

[1] The adjudication of delinquency was based on evidence that the defendant had committed assault and battery on members of his family. The defendant raises no objections here to the original proceeding.

been released from the department's custody.[2]  We believe, however, that despite his release the defendant has a stake in the outcome of this appeal.  Therefore, we will decide the issues presented.

A defendant convicted of crime faces a number of adverse consequences, apart from the punishment imposed by law. *Commonwealth* v. *Jones*, 382 Mass. 387, 396 (1981). *Sibron* v. *New York*, 392 U.S. 40, 55-58 (1968).  See *Pennsylvania* v. *Mimms*, 434 U.S. 106, 108 n.3 (1977).  If he appears as a witness in future criminal proceedings, his previous conviction may be used to impeach him. *Sibron* v. *New York*, *supra* at 55-56. *Commonwealth* v. *Jones*, *supra* at 396.  See Rule 609 of the Proposed Mass. R. Evid. (July, 1980).  If he is convicted of other crimes, the prior convictions may weigh against him in sentencing, and may subject him to punishment as a criminal recidivist. *Sibron* v. *New York*, *supra* at 55-56. *Commonwealth* v. *Jones*, *supra* at 396. Recognizing these possibilities, we have held that an appellate court must vacate an erroneous conviction even when the correction will not relieve the defendant of time in prison. *Commonwealth* v. *Jones*, *supra* at 395-397 (convictions vacated despite concurrent valid sentence).  On the same principle, we believe that we should not dismiss a criminal appeal simply because the defendant's sentence has expired.  See *Sibron* v. *New York*, *supra* at 55-58.  Cf. *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 703-706 (1976).

An adjudication concerning a juvenile is not, of course, a conviction of crime. See G. L. c. 119, § 53; *Commonwealth* v. *Rodriguez*, 376 Mass. 632, 634-637 (1978); *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 666-667 (1978).  The governing statutes minimize "collateral" consequences by providing that records of delinquency or extended commitment proceedings are inadmissible against the juvenile in subsequent

---

[2] On the defendant's motion, the judge who had heard the defendant's appeal in jury session held a new hearing.  He found that the defendant was no longer dangerous, and ordered his release.

criminal trials. G. L. c. 119, § 60. G. L. c. 120, § 21. This statutory protection does not, however, extend to subsequent sentencing proceedings; the Commonwealth would be free to place the defendant's extended commitment record before a sentencing judge in a future criminal matter. G. L. c. 119, § 60. G. L. c. 120, § 21. *Commonwealth* v. *Rodriguez*, 376 Mass. 632, 638-640 (1978).[3] Further, if the juvenile later appears as a State's witness in a criminal case, the defendant's right to confront and cross-examine witnesses may require admission of the juvenile's delinquency record as evidence of bias. *Commonwealth* v. *Ferrara*, 368 Mass. 182, 189 (1975). *Davis* v. *Alaska*, 415 U.S. 308 (1974). We consider these possible adverse consequences sufficient to justify our consideration of the defendant's postrelease appeal of his extended commitment order.[4]

In addition, the issue in this case, even if factually moot, might be "capable of repetition, yet evading review." See, e.g., *Southern Pac. Terminal Co.* v. *ICC*, 219 U.S. 498, 515 (1911); *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 274 (1978); *Diafario* v. *Commissioner of Correction*, 371 Mass. 545, 552 (1976). A juvenile subject to a continued commitment order must be released after two years have passed, unless a new order is issued, reviewed, and confirmed. G. L. c. 120, § 19. There are some indications that the present appeal might have been completed before the de-

---

[3] The defendant is currently facing criminal charges; seven days after his release from juvenile detention, he was arrested for burning of a motor vehicle and possession of a Molotov cocktail.

[4] In *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 703-704 (1976), we held that a defendant could not challenge a denial of early eligibility for parole after his release from prison. We noted, however, that denial of early parole may depend on "the seriousness of the underlying crime rather than . . . rehabilitative progress or suitability for parole," *id.* at 704, and concluded that the collateral consequences of such a decision were "insignificant," *id.* at 703. In contrast, an extended commitment order represents an independent judicial determination that the juvenile, at the time the order is issued, presents a threat to the public. G. L. c. 120, §§ 17-20. It is not redundant of the original delinquency adjudication, and would be of significant interest to a sentencing judge.

fendant's release if not for an excusable delay by the defendant's counsel.[5] Nevertheless, there is a substantial likelihood that persons in the defendant's position will have difficulty in completing the appellate process before their release, and this reinforces our decision to hear and decide the present appeal. See *Commissioner of Correction* v. *Myers*, 379 Mass. 255, 260-261 (1979); *First Nat'l Bank* v. *Haufler*, 377 Mass. 209, 211 (1979); *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 274 (1978).

2. *Right to a jury trial.* The defendant asserts that he was entitled under G. L. c. 120, § 20, and art. 12 of the Massachusetts Declaration of Rights to a jury trial on appeal of the order extending his commitment to the department's custody. We accept the statutory branch of the defendant's argument, and therefore we do not address his constitutional claim.[6]

An analysis of G. L. c. 120, § 20, which provides for appellate review of extended commitment orders, must begin with a description of the series of statutes to which § 20 belongs. Ordinarily, the department's custody of a delinquent juvenile terminates when the juvenile reaches age eighteen. G. L. c. 120, § 16. However, if the department believes that discharge would create a public danger, it may issue an order extending the juvenile's commitment. G. L. c. 120, § 17. Upon issuing such an order, the department must apply for review by the court that originally committed the juvenile to its care. *Id.* The court must then notify the juvenile of the department's action, and conduct a full hearing, at which the juvenile is entitled to counsel and an opportunity to compel the attendance of witnesses and the production of evidence. G. L. c. 120, § 18. After the

---

[5] The defendant's appellate counsel was appointed in March, 1980, but was not notified of the appointment until November, 1980. As a result, counsel applied for and received an extension of the deadline for filing his brief.

[6] We note, however, that a juvenile has no Federal constitutional right to a jury trial on the question of delinquency. *McKeiver* v. *Pennsylvania*, 403 U.S. 528, 545 (1971).

hearing, the court shall confirm the department's order if it finds "that discharge of the person to whom the order applies would be physically dangerous to the public because of his mental or physical deficiency, disorder, or abnormality." *Id.*

At this point G. L. c. 120, § 20, the section upon which this appeal focuses, comes into play. Section 20 provides that a juvenile who contests the judgment of the District Court may appeal to a District Court jury session, and that the "appeal shall be taken in the manner provided by law for appeal to the said session from judgments of a justice sitting without jury in criminal cases."[7]

In its natural sense, this language incorporates the statutes governing criminal appeals in the District Courts. Turning to G. L. c. 278, § 18, we find that a defendant who has waived a jury trial in the first instance and submitted to trial by a District Court judge may appeal and claim a new trial before a jury-of-six in the District Court jury session. *Id. Costarelli, petitioner,* 378 Mass. 516, 517 (1979). See, in addition, G. L. c. 218, §§ 26A, 27A. This legislative sequence strongly supports the defendant's claim. Further, we have interpreted a similar reference to normal criminal procedure in a related statutory context as a mandate for a jury trial. *Commonwealth* v. *Thomas,* 359 Mass. 386, 387-388 (1971). The statute at issue in *Thomas* authorized a juvenile adjudged delinquent by a District Court to appeal to Superior Court, and provided that the appeal

---

[7] The full text of G. L. c. 120, § 20, as amended through St. 1978, c. 478, § 68, provides that:

"(*a*) If under the provisions of sections eighteen and nineteen the court confirms an order, the person whose liberty is involved may appeal to a district court jury session for a reversal or modification of the confirmation. The appeal shall be taken in the manner provided by law for appeal to the said session from judgments of a justice sitting without jury in criminal cases.

"(*b*) After the hearing of the appeal the jury session may affirm the order of the justice, or modify it, or reverse it and order the appellant to be discharged by the board.

"(*c*) Pending the appeal the appellant shall remain under the control of the board."

should be "tried and determined in like manner as appeals
in criminal cases." G. L. c. 119, § 56, as amended through
St. 1964, c. 308, § 1. We concluded that this language en-
titled the juvenile to a new trial before a jury in Superior
Court. *Commonwealth* v. *Thomas, supra* at 388.[8] See
*Miaskiewicz* v. *Commonwealth,* 380 Mass. 153, 156-157
(1980).

The Commonwealth, however, contends that extended
commitment, unlike delinquency adjudication, is a "dispo-
sitional" issue, analogous to sentencing. Therefore, in the
Commonwealth's view, it is a matter within the exclusive
province of the court, and should not be submitted to a jury.
See Mass. R. Crim. P. 28, 29, 378 Mass. 898, 899 (1979). Cf.
*Commonwealth* v. *Marino,* 254 Mass. 533, 536 (1926);
*Commonwealth* v. *Crapo,* 212 Mass. 209, 210 (1912). To
harmonize this position with § 20, the Commonwealth sug-
gests that the statutory language incorporating District
Court procedure in criminal appeals refers to *sentencing*
procedure, cf. *Commonwealth* v. *Rodriguez,* 376 Mass.
632, 639 (1978); *A Juvenile, petitioner,* 364 Mass. 531, 534-
536, 538 (1974), and that the words "jury session" denote
only the *forum* in which these procedures are to take place.

Although we agree with the Commonwealth that judges
have a broad dispositional function under the juvenile stat-
utes, see G. L. c. 119, §§ 39G, 58, 61; *Police Comm'r of
Boston* v. *Municipal Court of the Dorchester Dist.,* 374
Mass. 640, 667 (1978); *A Juvenile* v. *Commonwealth,* 370
Mass. 272, 277-283 (1976); *A Juvenile, petitioner, supra* at
536-539, we believe that the Legislature intended that ex-
tended commitment be treated as a matter for independent
determination rather than an extension of prior juvenile

---

[8] General Laws c. 119, § 56, has been amended to reflect the 1978 court
reorganization, and now provides that a juvenile may appeal a delin-
quency adjudication to "a jury session in the district courts." The appeal
still is to proceed "in like manner as appeals in criminal cases." G. L.
c. 119, § 56, as amended through St. 1979, c. 344, § 1. In some in-
stances, the juvenile is entitled to a full twelve-person jury. *Id. Common-
wealth* v. *A Juvenile (No. 2), ante* 390, 391-393 (1981).

proceedings. "Juvenile" jurisdiction ends when a child reaches eighteen; the court in its juvenile session has no authority to commit a person over eighteen to the care of the department. G. L. c. 119, § 72. The provision for extended commitment appears in a separate chapter of the General Laws, and calls for a new determination of fact, independent from the original delinquency adjudication. The trier must find that, at the time of the extended commitment hearing, the person under consideration is dangerous to the public due to a mental or physical disorder. G. L. c. 120, § 18. In other contexts, the Legislature has entrusted similar issues to the discretion of judges sitting without juries, see G. L. c. 119, § 61 (transfer of juvenile cases to criminal docket); G. L. c. 123, § 8 (commitment of mentally ill persons); G. L. c. 123A, §§ 5, 6 (commitment of sexually dangerous persons); *Commonwealth* v. *Nassar*, 380 Mass. 908, 915-916 (1980); *Andrews, petitioner*, 368 Mass. 468, 479 (1975), but when it has done so it has not provided for appeal to a jury session as it has in § 20. Compare G. L. c. 119, §§ 39I, 56 and G. L. c. 120, § 20, with G. L. c. 119, § 61, G. L. c. 123, § 9, and G. L. c. 123A, § 6. Indeed, a provision for appeal to the jury session would have little practical meaning if read to require only the opinion of a second trial judge on a dispositional issue.

We hold, therefore, that by the terms of G. L. c. 120, § 20, the defendant was entitled to appeal the judgment confirming the department's extended commitment order for trial before a jury-of-six in the District Court session. Accordingly, we vacate the judgment entered in jury session by a judge sitting without a jury. See *Commonwealth* v. *A Juvenile (No. 2), ante* 390, 393-394 (1981).

3. *Standard of Proof.* The defendant also contends that his extended commitment could not be confirmed unless the State had proved beyond a reasonable doubt that he suffered from a mental or physical disorder, and that his release would endanger the public.[9] In light of our conclusion in

---

[9] The judge presiding over the defendant's appeal to jury session did not specify the standard of proof he had employed. The evidence in support of extended commitment appears to have been strong. We see no necessi-

the previous section of this opinion — that the Legislature intended procedure on appeal of an extended commitment to conform to procedure on appeal of an adult criminal conviction — the question of standard of proof can quickly be resolved in the defendant's favor. Proof beyond a reasonable doubt is one of the most basic elements of our criminal process. *In re Winship*, 397 U.S. 358, 363 (1970). *Andrews, petitioner*, 368 Mass. 468 (1975). We have often recognized that this fundamental standard applies not only to "criminal" proceedings, but also to proceedings that bear a "civil" or "nonpunitive" label, but are sufficiently analogous to determinations of guilt to require a high degree of certainty in findings of fact. *In re Winship, supra* at 365-366, 368 (opinion of the Court), 370-371 (Harlan, J., concurring). *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 275-277 (1978). *Andrews, petitioner, supra* at 486-491. This is not to say that proof beyond a reasonable doubt is constitutionally required in every commitment proceeding; the Legislature retains some leeway to provide for protective or rehabilitative confinement based upon a lesser standard of proof. *Addington* v. *Texas*, 441 U.S. 418, 433 (1979). See *Commonwealth* v. *Travis*, 372 Mass. 238, 251 (1977). Constitutional boundaries, however, are not at issue in this case. Under § 20, an extended commitment proceeding is — as we have explained — to be treated in like manner as a criminal conviction. Accordingly, we believe that the Legislature intended that grounds for extended commitment must be proved beyond a reasonable doubt.

The defendant also argues that he was entitled on equal protection grounds to a standard of proof beyond a reasonable doubt. We need not decide this constitutional issue in light of our holding that G. L. c. 120, § 20, mandates a standard of proof beyond a reasonable doubt.

___

ty to consider the sufficiency of the evidence, because we have vacated the judgment entered in jury session on the ground that the defendant was entitled to a jury-of-six. We believe, however, that we should identify the appropriate standard for use in future extended commitment proceedings.

In sum, we hold that G. L. c. 120, § 20, entitles a person subject to a Department of Youth Services extended commitment order to appeal a District Court confirmation of that order for trial before a jury-of-six. We also conclude that to justify extended commitment, the State must prove beyond a reasonable doubt that release would create a public danger, due to the subject's mental or physical disorder. Therefore, we vacate the judgment entered in jury session affirming the District Court judge's confirmation of the order.

*So ordered.*