CAMERON KENNISTON & others[1] vs. DEPARTMENT OF YOUTH
SERVICES & others.[2]

Suffolk. November 5, 2008. - February 10, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Due Process of Law,* Substantive rights. *Practice, Civil,* Proceeding to extend
commitment of a juvenile. *Statute,* Construction.

This court concluded that G. L. c. 120, §§ 17-19, the statute allowing for the
extended civil commitment of a youthful offender in the custody of the
Department of Youth Services (department) after the youth's eighteenth
birthday if the department determines that the youth "would be physically
dangerous to the public," did not comport with substantive due process
requirements and was constitutionally infirm, where the statute failed to
establish or require any link between a youth's alleged dangerousness and
a mental condition or defect making the youth incapable of controlling his
or her behavior, and where the statute failed to provide any standard for
what constituted physical dangerousness. [183-190]

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on July 10, 2008.

The case was reported by *Cordy*, J.

*Barbara Kaban* (*Robert D. Fleischner* with her) for Cameron
Kenniston & others.

*Pamela L. Hunt*, Assistant Attorney General (*Randall E. Rav-
itz*, Assistant Attorney General, with her) for Department of
Youth Services.

*Erica E. Cushna*, for Jonathan Maldonado, was present but
did not argue.

*Sharon N. Chaitin-Pollak*, Committee for Public Counsel
Services, for Steve Stephen, was present but did not argue.

---

[1]Steve Stephen and Jonathan Maldonado.

[2]Robert Jarvis, Director, Canterbury Secure Treatment Unit, John Connelly
Treatment Center; Howard Jardine, Director, Somerville Transition Program;
and Kevin McNeeley, Director, Robert F. Kennedy Detention Center.

*Jennifer Honig, William Landers, Frank Laski, Francine Sherman, & Marsha Levick,* for The Mental Health Legal Advisors Committee & others, amici curiae, submitted a brief.

COWIN, J. In this case we consider the constitutionality of G. L. c. 120, §§ 17-19, the extended commitment statute (statute) for juvenile offenders. In general, when a juvenile committed to the Department of Youth Services (department) prior to his or her eighteenth birthday reaches age eighteen, the juvenile is released. See G. L. c. 120, § 16. The statute allows the continued commitment of a youth in the department's custody for an additional three years after the youth's eighteenth birthday if the department determines that the youth "would be physically dangerous to the public."[3] G. L. c. 120, §§ 17, 19. Pursuant to the statute, once the department issues an extended commitment order, it must request affirmation of that order from the Juvenile Court Department and must accompany its application with a "written statement of the facts upon which the department bases its opinion." G. L. c. 120, § 17. The statute contains no requirement of a hearing prior to the department's order and explicitly states that no application for judicial review "shall be dismissed nor shall the order be discharged, merely because of its form or an asserted insufficiency of its allegations; every order shall be

---

[3]"Whenever the department is of the opinion that discharge of a person from its control at the age limit stated in [G. L. c. 120, § 16,] would be physically dangerous to the public, the department shall make an order directing that the person remain subject to its control beyond the period and shall make application to the committing court for a review of that order by the court. The order and application may be made at any time prior to the date of discharge stated in said [§ 16]. The application shall be accompanied by a written statement of the facts upon which the department bases its opinion that discharge from its control at the time stated would be physically dangerous to the public, but no such application shall be dismissed nor shall the order be discharged, merely because of its form or an asserted insufficiency of its allegations; every order shall be reviewed upon its merits." G. L. c. 120, § 17.

"When an order of the department is confirmed as provided in [G. L. c. 120, § 18,] the control of the department over the person shall continue, subject to the provisions of this chapter; provided, however, unless the person is previously discharged in accordance with '[G. L. c. 120, § 6 (*e*)], the department shall discharge the person upon his twenty-first birthday. The department shall have the power, in order to protect children and adolescents, to transfer the custody of any person eighteen years of age or older to the department of correction for placement in an appropriate institution." G. L. c. 120, § 19.

reviewed upon its merits." *Id.* A final determination on the merits is made according to the procedures for delinquency proceedings set forth in G. L. c. 119, §§ 55A, 55B, 56. See G. L. c. 120, § 18.

Each of the plaintiffs was adjudicated delinquent and committed to the department's custody when he was sixteen years old. All three were the subjects of extended commitment orders filed in different divisions of the Juvenile Court Department immediately before they reached their eighteenth birthdays. Each plaintiff filed a motion to dismiss the order and application to extend commitment on the grounds that the statute violates procedural and substantive due process requirements under the United States Constitution and the Massachusetts Declaration of Rights. When their motions were denied, the plaintiffs sought relief from a single justice of this court, who reserved and reported three questions regarding the constitutionality of the statute to the full court. Because the statute fails to establish or require any link between a youth's alleged dangerousness and a mental condition or defect making the youth incapable of controlling his or her behavior, and fails to provide any standard for what constitutes "dangerousness," we conclude that the statute does not comport with substantive due process requirements and is constitutionally infirm.[4]

*Facts and procedural history.* Each of the plaintiffs, Cameron Kenniston, Steve Stephen, and Jonathan Maldonado, was adjudicated delinquent and committed to the department more than one year prior to turning eighteen. Each plaintiff was initially placed on probation and then remanded to one of the department's facilities after violating the terms of his probation on at least one occasion. Shortly before the plaintiffs' eighteenth birthdays, the department arranged for a psychological evaluation of each, with a view to determining whether an order of extended commitment should be entered. The evaluators were provided access to the department's reports of the plaintiffs' behavior while in custody as well as their delinquency histories; the evaluators also interviewed treating therapists and family members of some of the plaintiffs.

---

[4]We acknowledge the amicus brief in support of the plaintiffs submitted by the Mental Health Legal Advisors Committee, the Juvenile Rights Advocacy Project, and the Juvenile Law Center.

The department filed an application and order of extended commitment and a request for judicial review in the Suffolk County, Hampden County, and Essex County divisions of the Juvenile Court Department, respectively, before each plaintiff's eighteenth birthday. The applications included portions of the evaluators' reports, as well as statements of uncharged conduct described by the plaintiffs during their evaluations.[5] After their motions to dismiss were denied in the respective divisions of the Juvenile Court Department, the plaintiffs sought injunctive and declaratory relief, writs of habeas corpus, and relief pursuant to G. L. c. 211, § 3, from the single justice. The single justice reserved and reported three questions to the full court:

> "(1) Whether the extension procedure set forth in G. L. c. 120, §§ 16-19, violates the procedural due process protections of the State and Federal Constitutions.
>
>> "(a) May G. L. c. 120, §§ 17-18, be construed to provide for judicial review of the basis for extended custody shortly after the department makes 'an order directing the person to remain subject to its control' and an 'application to the committing court for a review of that order'?
>>
>> "(b) If the statute may be read to allow for judicial review, what procedure is due?
>
> "(2) Whether the standard for the extension order, specifically when 'the department is of the opinion that discharge of a person from its control . . . would be physically dangerous to the public,' comports with substantive due process.
>
> "(3) Whether the standard for the extension order, specifically when the 'department is of the opinion that discharge of a person from its control . . . would be physically dangerous to the public,' is unconstitutionally vague."[6]

---

[5]Although each evaluation report stated that the plaintiff exhibited signs of "conduct disorder," each report also indicated that the plaintiff had not received care in a psychiatric hospital, had not been diagnosed with a mental illness, and was not currently being prescribed psychiatric drugs. In two cases, the reports did not recommend continued confinement in a secure facility.

[6]We allow the department's motion to supplement the record on reservation and report with data on all of the extended commitment orders that the department filed in 2006, 2007, and 2008.

The single justice also directed the three divisions of the Juvenile Court Department to review the sufficiency of the evidence supporting the department's extended commitment orders for the three plaintiffs prior to a trial on the merits as provided in G. L. c. 120, § 18. Hearings were held in the three divisions of the Juvenile Court Department pursuant to the single justice's order; two of the plaintiffs were released without conditions pending trial, and the third plaintiff was held on the ground that he would be physically dangerous if released.

*Discussion.* The right to substantive due process under the United States Constitution protects individuals from unreasonable governmental interference with fundamental rights.[7] *United States* v. *Salerno*, 481 U.S. 739, 746 (1987). *Dutil, petitioner*, 437 Mass. 9, 13 (2002). Freedom from bodily restraint is a fundamental liberty interest at the core of the protections provided under the due process clause of the Fourteenth Amendment to the Federal Constitution. *Foucha* v. *Louisiana*, 504 U.S. 71, 80 (1992). *Aime* v. *Commonwealth*, 414 Mass 667, 674 (1993). However, a statute impinging on a fundamental right will be upheld if it is narrowly tailored to further a legitimate and compelling governmental interest ("strict scrutiny" analysis). *United States* v. *Salerno, supra* at 746, 748-751; *Aime* v. *Commonwealth, supra* at 673. See *Blixt* v. *Blixt*, 437 Mass. 649, 655-656, 660 (2002), cert. denied, 537 U.S. 1189 (2003).

Ordinarily, a juvenile adjudicated to be delinquent is released from commitment to the department on his or her eighteenth birthday. See G. L. c. 119, §§ 58, 72. Although described as an "extended" commitment, the statute at issue does not authorize an extension of time in the department's custody based on the original delinquency proceeding; rather, it contemplates a separate commitment requiring a separate judicial proceeding and a factual finding of present "dangerousness." See G. L. c. 120,

---

[7]Because the due process provisions of arts. 1, 10 and 12 of the Massachusetts Declaration of Rights "afford protection comparable to that supplied by the Fourteenth Amendment" to the United States Constitution, *Rushworth* v. *Registrar of Motor Vehicles*, 413 Mass. 265, 270 (1992), quoting *Boston* v. *Keene Corp.*, 406 Mass. 301, 308 n.8 (1989), and are at least equally protective, see *Planned Parenthood League of Mass. Inc.* v. *Attorney Gen.*, 424 Mass. 586, 590-591 (1997), we limit our due process analysis to the plaintiffs' rights under the Fourteenth Amendment.

§§ 17 and 18; *Department of Youth Servs.* v. *A Juvenile*, 384 Mass. 784, 790-792 (1981). While delinquency adjudications under G. L. c. 119, §§ 58 and 72, are tried and determined in a manner similar to criminal trials, extended commitment under G. L. c. 120, §§ 17 and 18, is a civil commitment. See *Department of Youth Servs.* v. *A Juvenile, supra.* See also *Commonwealth* v. *Mathews*, 406 Mass 380, 387 (1990). Civil commitment for any purpose "constitutes a significant deprivation of liberty that requires due process protection." *Addington* v. *Texas*, 441 U.S. 418, 425 (1979). Because extended commitment under the statute impinges on a fundamental liberty interest, we review whether the statute comports with substantive due process under a strict scrutiny analysis.[8] See, e.g., *Dutil, petitioner, supra* at 13-14, 16-17; *Commonwealth* v. *Bruno*, 432 Mass. 489, 509-513 (2000). Recognizing that duly enacted statutes are presumed to be constitutional, see *United States* v. *Salerno, supra* at 745; *Commonwealth* v. *Welch*, 444 Mass. 80, 100 (2005), we are unable to construe the statute in a manner that would render it consistent with due process requirements.

The statute allows the department to file a commitment order "whenever [it] is of the opinion that discharge of a person from its control . . . would be physically dangerous to the public." G. L. c. 120, § 17. Civil commitment is constitutional only in "certain narrow circumstances" where the individual's dangerousness is linked to a mental illness or abnormality that causes the individual to have "serious difficulty" in controlling his or her behavior. See *Kansas* v. *Crane*, 534 U.S. 407, 412-413 (2002); *Dutil, petitioner, supra* at 16. See also *Kansas* v. *Hendricks*, 521 U.S. 346, 357-358 (1997). The requirement of a link between dangerousness and a serious lack of ability to control one's behavior is critical. "[*Kansas* v.] *Hendricks* underscored the constitutional importance of distinguishing a dangerous sexual offender subject to civil commitment 'from other dangerous persons who are perhaps more properly dealt with exclusively

---

[8]The statute must also afford individuals facing extended commitment the full panoply of procedural due process protections. For example, contrary to the department's assertions, the statute makes no provision for a predeprivation process. Because the statute fails to meet substantive due process requirements, however, we need not address its procedural inadequacies.

through criminal proceedings.' . . . That distinction is necessary lest 'civil commitment' become a 'mechanism for retribution or general deterrence' — functions properly those of criminal law, not civil commitment." *Kansas* v. *Crane, supra* at 412, quoting *Kansas* v. *Hendricks, supra* at 360, 372-373. A weakness in the present statute is that it permits extended detention based solely on dangerousness, without any link to a mental condition or defect or an inability to control one's behavior.

An earlier version of G. L. c. 120, § 17, required that physical dangerousness be due to "the person's mental or physical deficiency, disorder or abnormality." See St. 1948, c. 310, § 22. In 1990, the Legislature eliminated the language which required that link. See St. 1990, c. 267, §§ 7, 8. Where the Legislature has deleted such language, apparently purposefully, the current version of the statute cannot be interpreted to include the rejected requirement. Reading in language that the Legislature chose to remove, as would be required here, violates basic principles of statutory construction and impermissibly interferes with the legislative function.[9] See *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't,* 439 Mass. 352, 355 (2003).

Furthermore, significantly greater due process protections are required in the context of a statute that is punitive rather than regulatory. See *Bell* v. *Wolfish,* 441 U.S. 520, 535-537 (1979); *Opinion of the Justices,* 423 Mass. 1201, 1219-1223 (1996). Here, however, we are unable to determine, from either the statutory language or the legislative history, the goal of the statute, be it preventive, punitive, or for the continuation of treatment. While the legislative intent with regard to simultaneous changes made to G. L. c. 119, permitting transfer to the adult court of juveniles charged with certain offenses, was plainly both punitive and to protect the public, the purpose underlying the changes in the definition of physical dangerousness in G. L. c. 120 is not as

---

[9]Indeed, comments made at that time by the then commissioner of the department indicate that the requirement of a mental abnormality or defect was deliberately removed in 1990 in order to allow extended commitment of juveniles who did not suffer from a mental illness. See Detention vs. Incarceration: Rise in Murders Renews Call to Classify Youths as Adults, Boston Globe, Nov. 23, 1990, at 1.

clear.[10] The department emphasizes the legislative intent to pro-
vide continued treatment and services inherent in all delinquency
proceedings. See G. L. c. 119, §§ 1, 53; R.L. Ireland, Juvenile
Law § 1.3, at 29-32 (2d ed. 2006).

As the department points out, the statutory language in G. L.
c. 123A, §§ 1, 5, and 9, authorizing continuing civil commit-
ment for certain sex offenders, does not explicitly require a
finding of "mental illness" or "mental abnormality." See *Dutil,
petitioner, supra* at 15-16. Yet, we were able to construe that
sex offender commitment statute as comporting with substan-
tive due process because it required "a general lack of power to
control . . . sexual impulses." *Id.* at 16, quoting G. L. c. 123A,
§ 1. We determined that that statute was constitutional because
there was clear evidence of legislative intent to require a "present
mental condition" resulting in an inability to control one's impulses
as an element of dangerousness. *Id.* at 16-17. Here, given the
absence of a stated goal and the express removal of such statu-
tory language, we are unable to do so.

Moreover, the statute was amended in 1996, well after the
Supreme Court's decision in *Foucha* v. *Louisiana*, 504 U.S. 71,
77-82 (1992), requiring both mental illness and dangerousness in
order to maintain an involuntary commitment, and the require-
ment of mental abnormality was not reinstated. In addition, the
Legislature has explicitly included such a requirement in other
statutes. See, e.g., G. L. c. 123, §§ 1, 7, 12 (mental health statute).

The department further argues that it has implemented rules
including significant substantive protections. It asserts that, in
recent proceedings, it has conducted a psychological evaluation
of each youth identified as a possible candidate for an order of
extended commitment before entering the order, and has asked

---

[10]See St. 1990, c. 267, "An Act Relative to Extended Commitment of
Juvenile Offenders and Trial as Adults"; *Charles C.* v. *Commonwealth*, 415
Mass. 58, 61-64 (1993). See, e.g., Roundup, State House News Service, Dec.
7, 1990; State House News Service (Senate Sess.), June 25, 1990; State House
News Service, Mar. 15, 1989; For Murder Suspect, Youth Is Now Little Edge,
Boston Globe, Dec. 5, 1990, at 3. Contrast Detention vs. Incarceration: Rise
in Murders Renews Call to Classify Youths as Adults, Boston Globe, Nov. 23,
1990, at 1 (department believed it "needed more time" with juvenile in its
custody on other charges who committed murder after release at age eighteen,
but was unable to hold youth because he did not meet statutory requirement of
dangerousness by reason of mental illness).

its experts to evaluate whether the juvenile has a "mental condition" that results in physically dangerous behavior and a serious difficulty in controlling such behavior. The department states that it uses the term "mental condition" as defined in *Dutil, petitioner, supra* at 18, to require a volitional, emotional or cognitive condition. However, the fact that the department may have imposed specific protections by rules, which it could eliminate or modify at any time, does not save an otherwise impermissible statutory scheme.

More recently, we advised the Legislature in 2004 that we had "grave concerns" about the constitutionality of the present statute and invited it to correct the deficiencies. See Andrew A. *vs.* Department of Youth Servs., No. SJC-08834 (July 1, 2004).[11] The Legislature, however, has chosen not to act. Furthermore, the department's citation to *In re Howard N.*, 35 Cal. 4th 117 (2005), is inapposite. In that case, the California Supreme Court upheld a civil commitment statute based on other language within the same statute as well as stated legislative intent. The court also mentioned that the California Legislature had previously responded to the court's opinions by immediately correcting other constitutional deficiencies in the statute. *Id.* at 132-137.[12] Such is not the case here.

In addition to the statute's failure to comport with substantive due process, the statutory requirement that a juvenile be found "physically dangerous" is unconstitutionally vague. See *Aime* v. *Commonwealth*, 414 Mass. 667, 683, n.22 (1993). The language contains no indication of the nature and degree of dangerousness that would justify continued commitment, and offers the department no guidance on how to make such a determination.[13] The statute does not limit consideration of physical dangerousness to

---

[11]See also *Commonwealth* v. *Kelley*, 411 Mass. 212, 215-217 (1991).

[12]The department's argument that most persons in its custody who object to the extended commitment orders eventually reach an agreed settlement to extend custody, and that few cases actually go to trial, is irrelevant. The department's statement that it issues extended commitment orders in only a small fraction of cases involving those in its custody who reach age eighteen in any given year is likewise immaterial. Additionally, the department's argument that the statute only provides for extended control for a three-year period, rather than for an indefinite period, is without merit; a three-year detention plainly impinges on a youth's fundamental liberty interest.

[13]We note the research in adolescent psychology concerning the differences

any specific group of juveniles such as those committed for particular violent offenses or for sex offenses; it applies to any juvenile committed to the department who is reaching the age of eighteen. The statute requires no specific degree of certainty that an individual is dangerous, unlike other statutes, such as the mental health statute, which require a "likelihood of serious harm" to self or others. See G. L. c. 123, §§ 1, 35; *Commonwealth* v. *Nassar*, 380 Mass. 908, 912, 916 (1980). Thus, the statutory language impermissibly leaves a determination of dangerousness to the "unbridled discretion" of the department in filing its petition, and, ultimately, offers no guidance to limit the discretion of the judge who reviews the petition. See *Aime* v. *Commonwealth*, *supra* at 682.

We have previously invalidated a bail detention statute that imposed a dangerousness requirement in language similar to that at issue here. See *id.* at 680-683. In that case, we held that the bail statute violated due process protections because it did not specify the offenses that were defined as dangerous, did not require proof of dangerousness by clear and convincing evidence, and allowed unbridled discretion in determining whether the individual is deemed to be dangerous. See *id.* We noted the significant potential for abuse where someone could be detained for being known as a troublemaker, or for crimes considered particularly repugnant. See *id.* at 682.

The language of the statute allows the same potential for abuse of unlimited discretion as the bail detention statute invalidated in *Aime* v. *Commonwealth, supra.* For instance, the extended commitment report on one of the plaintiffs cites repeatedly his tendency to defy authority and describes him as "defiant"; it also states that he is "too upbeat and positive given his current circumstances." The report on another plaintiff describes him as "disrespectful" and "curt," and notes that he does not display much humor. Contrast *United States* v. *Salerno*, 418 U.S. 739, 742-743, 749-752 (1987) (Federal bail reform act narrowly tailored because it prohibited bail only in limited number of cases

in adolescent and adult decision-making and thought processes, and the additional difficulty these differences create for testing tools designed to assess an adolescent's risk of future dangerousness. See *Roper* v. *Simmons*, 543 U.S. 551, 569-571 (2005).

involving "extremely serious" offenses, listed specific set of factors as guidance in defining dangerousness, and required proof by clear and convincing evidence that no release conditions would ensure public safety).

The department claims that the phrase "physically dangerous to the public" should be interpreted to mean a "likelihood of serious harm" as defined in the mental health statute. It further contends that, in the context of extended commitment orders, we should construe the definition of likelihood of serious harm as analogous to G. L. c. 123, § 1, that is, "a substantial risk of physical harm to other persons as manifested by evidence of homicidal or other violent behavior or evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them." See *Department of Youth Servs.* v. *A Juvenile*, 398 Mass. 516, 522, 524 n.9 (1986). To do so, however, would mean the extensive addition of language that the Legislature has included in other statutes but has chosen to omit here.

While we make every effort to interpret a statute so as to render it constitutional, in this case such an interpretation is not possible. To satisfy due process requirements would require a complete rewriting of the statute; this responsibility belongs to the Legislature. Therefore, we conclude that the statute is unconstitutional because it violates substantive due process requirements.

Given our conclusion that the statute violates substantive due process, we need not address its procedural deficiencies. However, as mentioned, see note 8, *supra*, we note that the present statute contains no predeprivation procedural protections. The "full hearing" provided in G. L. c. 120, § 18, with the requirement of counsel, the opportunity to present evidence, and the ability to compel the attendance of witnesses, clearly defines the "review[] upon [the] merits" in § 17, and not a pretrial hearing never mentioned in the statute.[14] We emphasize that any new statute must include procedural due process protections in the

---

[14]Furthermore, the record does not support the department's contention that juveniles are held for only a "short" period of time pending trial. The statute imposes no limit on the amount of time that an individual may be held pending trial, and the record here indicates that, on average, there is a four to six-month period prior to trial. Cf. *Commonwealth* v. *Bruno*, 432 Mass. 489, 512-513 (2000) (analogizing to G. L. c. 123, § 12 [a], and imposing requirement of probable cause hearing within ten days for convicted sex offenders where

form of appropriate predeprivation proceedings as well as a trial on the merits. We also observe that the department's suggestions to the single justice about the type of procedures it has developed are inadequate. The department's proposal of a determination of dangerousness based on a "probable cause to arrest" standard and nonevidentiary hearings is not sufficient to comport with due process. See *Mathews* v. *Eldridge*, 424 U.S. 319, 334-335 (1976); *Spence* v. *Gormley*, 387 Mass 258, 274 (1982).

*Conclusion.* We do not answer the first reported question because, for the reasons stated, we have confined our analysis to the subject of substantive due process and have not addressed procedural due process considerations. We answer the second reported question, "No," and the third reported question, "Yes." A declaration shall enter in the county court stating that the statute does not comport with the due process clause of the Fourteenth Amendment to the United States Constitution. The matter is remanded to the county court for further proceedings as appropriate.

*So ordered.*

statute met substantive due process requirements and required hearing to justify temporary confinement, but did not specify length of time that individual could be held prior to required probable cause hearing).